# Kelly *et al. v.* Trustees of the Alabama & Cincinnati R. R. Co.

*Bill in Equity for the Appointment of a Receiver, and to Foreclose Deed of Trust.*

1. *Judicial notice of charters and powers of private corporations.*—Judicial notice can not be taken of the charter of a private corporation, nor of its corporate power or capacity, if it derives existence from such charter, i. e. a special act of incorporation. If it is shown, however, to have been incorporated under the general laws, which authorize the formation and define the powers of corporations, these are public laws, of which notice must be taken, and the power must be referred to such general laws.

2. *Railroad companies; power to borrow money and secure its payment.*—Corporations created for the construction of railroads, in the absence of limitation or restraint by statute, have power (at common law) to borrow money, and to make bills, bonds or promissory notes for its repayment, and may mortgage its real and personal property to secure debts thus created.

3. *State endorsement under Acts 1869–70, creating paramount lien; when railroad company may create subordinate lien.*—The internal improvement law, (Acts of 1869–70, p. 70,) while providing that the State shall have a first and permanent lien for its protection, when it has endorsed bonds under that act, does not forbid the railroad corporations from creating other liens on the property subordinate to such lien of the State; especially a lien to secure the bonds endorsed, &c.

4. *Remedy by statute is given the State alone; when can not be set up by purchasers of railroad.*—The remedies afforded by the statute are given to, and enforceable by the State alone; they can not be set up by the purchasers of the road, in a contest between them and the holders of endorsed bonds, secured also by the corporation's mortgage, to defeat the latter in foreclosing such mortgage, whatever might be their effect if the State were a party, and the holders of endorsed bonds, secured also by the corporation's mortgage, should seek to set up rights under the mortgage to embarrass the State in pursuing its remedies.

5. *Party having prior lien; what sufficient answer to objection that State is not made a party.*—The presence of a prior mortgagee, or a party having a prior lien, who is not subject to the jurisdiction of the court, and the validity of whose incumbrance is not disputed, may be dispensed with; and where such prior incumbrancer is a State which can not be made a party, this is a sufficient answer to the objection that it is not made a party to a suit asserting no adverse claims to the rights of the State.

6. *Resolution of directors, authorizing bonds to raise money; when includes earnings, profits, &c.*—Where the governing body of the corporation, in a resolution authorizing an issue of bonds to raise money, provide for the execution of a deed of trust to secure the same, on its right of way, road-bed, etc., "*and on all the real and personal property now and hereafter belonging to the company,*"—this necessarily includes the earnings and profits, and authorizes a trust deed conveying the tolls, freights, rents, incomes, &c.

7. *Receiver of railroad; appointment of; court of equity acts with caution; case demanding such appointment; effect of.*—Where the appointment of a receiver is asked to displace the exercise of corporate authority over a railroad, courts of equity act with extreme caution, and require a clear case of right, and of pressing necessity to induce their interference; but when the corporation itself has been declared bankrupt, with interest having accumulated on its bonds exceeding the value of the property mortgaged to secure them, and purchasers of the equity of redemption at the assignees sale are in possession of the road and property mortgaged, receiving the incomes, profits and earnings of the road (which the mortgagee is entitled to take), and using the property for their own exclusive use and benefit, a clear case is presented for the appointment of a receiver; and such appointment would not be an interference with the corporate power and authority over the road, or a disturbance of corporate possession, but merely of that of the purchasers, who are using it for their own exclusive benefit.

8. *Void endorsement by State; liability of railroad company, on bonds.*—Although railroad bonds be endorsed in contravention and fraud of the internal improvement law, and the endorsement be therefore void, this will not release the corporation of its liability for such bonds, which the corporation has secured by a deed of trust upon its property.

APPEAL from the Chancery Court of Lee.

Heard before the Hon. N. S. GRAHAM.

Bill was filed by appellees, William H. Barnes and Henry Clews, as trustees of the East Alabama & Cincinnati Railroad Company, against appellants, Richard H. Kelly and others, praying the appointment of a receiver to take possession of the railroad property, and manage the same, and seeking a foreclosure of a deed of trust, the execution of which will appear from the averments of the bill.

The bill alleges, 1st, that the said company, "a corporation created and existing under and by virtue of the laws of the State of Alabama," did cause to be executed, its first mortgage gold bonds, bearing date July 1, 1870, for one thousand dollars each, payable to bearer on the first of July, 1890, in American gold coin, at the banking-house of Henry Clews & Co., in the city of New York, with interest free from United States Government tax, at the rate of eight per cent. per annum, payable semi-annually on the first day of January and July of each year, on the presentation of the coupons annexed, as they become due—the same being 3,500 bonds,

numbered from one to 3,500 inclusive, issued in accordance
with and upon the conditions prescribed by the laws of the
State of Alabama, and being endorsed by the State of Ala-
bama; 2d, that said company, for the purpose of facili-
tating the negotiation and sale of said bonds, did, on the first
of July, 1870, execute a mortgage deed to complainants, as
trustees, for the purposes mentioned in said trust or mort-
gage deed, (viz., to secure the payment of the principal and
interest of the first mortgage bonds, issued by the company
and endorsed by the State, and the payment of the bonds of
said company, not endorsed by the State, to the amount of
$705,000), whereby said company conveyed to complainants
its entire road, equipments, real and personal property, then
or thereafter belonging to said company, its franchises, &c.,
"together with the tolls, freights, rents, issues, incomes, earn-
ings and profits thereof," &c., in trust for the equal benefit
and security of all the persons and bodies corporate, who
had been or might become holders of said bonds; 3d, that
the fifth provision of said mortgage deed provides that it
shall be the duty of said trustees or their successors, to
exercise the powers granted them by the third and fourth
sections of said deed, or to take other appropriate proceeding
for the enforcement of the rights of the bondholders, upon
the requisition in writing of the holders of two hundred
thousand dollars in amount of said bonds, and, upon such
requisition being made, the said trustees, at the time being,
shall proceed at once to enforce such rights as hereinbefore
provided, or by judicial proceeding or otherwise, as they,
under the advice of counsel, shall deem most conducive to
the interest of all the bondholders—their expenses, compen-
sation, &c., to be deducted and paid from the income or the
proceeds of sale of the railroad and property conveyed by
the said mortgage—and that the third and fourth provisions
of said mortgage provides that these proceedings shall be
taken whenever the said company defaults in payment of the
interest on the bonds for six months; 4th, that said com-
pany was petitioned into bankruptcy and received its dis-
charge in 1873, and that said company has held no meetings
of its directors since then, and is now to all intents and
purposes dissolved, there being no organization of the same;
that Samuel G. Jones, and John F. Bailey, were appointed
assignees, and, by virtue of an order of the United States
District Court, sitting at Montgomery, they sold and con-
veyed by deed, to James J. Colt, Richard H. Kelly, Bartho-
lomew Boyle, and Virgil S. Murphey, purchasers thereof, all
the right, title and interest of said company as hereinbefore
stated, including its franchise, rolling-stock, lands, fixtures,

and all its real and personal property; that said sale was duly confirmed by the said court, sitting as a court of bankruptcy, on the thirtieth of April, 1874, and by order of said court said deed was executed to the purchasers on the fourteenth of May, 1874; that said deed was made, as stated by the deed itself, under the express reservation of the lien of the trust deed to complainants; 5th, that at the time of said sale the property consisted (besides its corporate rights and franchises, and road-beds, and right of way extending two hundred and twenty miles, from Eufaula, Alabama, to Guntersville, Alabama; of twenty miles of completed railroad—about three miles in the county of Lee and the balance in Chambers county; that said twenty miles is laid with ties and rails, and is now being run and operated upon by said purchasers; also about five miles of completed road on the same line in the county of Etowah; that said purchasers have property on hand purchased with the income of said road, and also a large amount of freights, tolls and profits, subject to the lien of said deed of trust; 6th, that the interest on said bonds has been in default for more than four years, and is still unpaid; and this bill is exhibited upon the authority and written request of the holders of more than two hundred thousand dollars in amount of said bonds; that none of the proceeds of said road have been applied to the payment of said interest; that the entire real and personal property is insufficient to discharge even the accrued interest on said bonds; that although the said purchasers have had the full use and possession of said property since May 14, 1874,—more than three years—they have consumed and applied all the net proceeds of the said road to purposes other than the payment of the accrued interest due on said bonds, and they have failed entirely to extend said road; that if they have had no net earnings from the operations of said road, then they have so carelessly, recklessly and badly operated the same, that it has been of great and serious damage and injury to the bondholders of said company; that the property itself being insufficient to pay said interest, it is necessary that the income, tolls, profits and freights, be held and deposited for such payment; that at the present time these proceeds, profits, &c., are being so applied as not to be legally applicable to the reduction of the said incumbrance; that the amount of said bonds is seven hundred and five thousand dollars, upon which none of the accrued interest has been paid; that the present value of said property is less than one hundred thousand dollars; that it is highly necessary that said property be preserved pending this proceeding, and that the money, income, freights, &c., be held

and deposited to satisfy the interest and principal of said bonds; that the said deed of trust creates a lien for that purpose, and authorizes complainants to receive and take the same, either personally or through their agents, managers or receivers, and apply the same to the payment of the costs of these proceedings, and the balance to the extinguishment of the said interest and principal, as far as they will go; 7th, that said purchasers have been operating said road since their purchase, using the same corporate name, to-wit: *The East Alabama and Cincinnati Railroad Company.* The bill then prays for a receiver, and a foreclosure of said deed of trust.

Motion to have a receiver appointed was made after due notice.

Respondents (appellants) filed their answer in substance as follows: 1st, they admit the several allegations of the first paragraph of the bill, except they "deny that any of said bonds were ever issued by said corporation according to, and in pursuance of, said act of February 21, 1870; 2d, that it appears from the face of said trust deed that its sole scope and purpose was to secure the payment of said gold bonds, with the interest thereon, free of Government tax, and which were to be issued only under such conditions and restrictions; 3d, they deny that the owners of two hundred thousand dollars, of said bonds, have, in writing, requested said trustees to commence this suit, and they plead the want of such requisition in writing in statement of this bill; 4th, they admit the allegations of the fourth paragraph of the bill; 5th, they admit the allegations of the fifth paragraph of the bill, except they deny having on hand any tolls, freights and incomes, at the present time, subject to the liens of said trust deed; 6th, they admit the allegations of the sixth paragraph of the bill, except they deny that they have carelessly or badly operated said road to the damage or injury of the bondholders; and they say that they have expended the earnings of the road, after deducting current expenses on repairs and permanent improvements; and they now explicitly deny that the original bill was filed upon the written requisition of the *bona fide* holders of said bonds, negotiated under the restrictions and conditions of said deed; and they deny that any of said bonds were ever negotiated or sold according to the provisions of said act of twenty-first February, 1870; 7th, they admit the allegations of the seventh paragraph of the bill; 8th, for further answer, respondents say that two hundred and fifty of the bonds purporting to be endorsed by the State were hypothecated, &c.; . . . . 12th, that the whole four hundred of the bonds

[Kelly et al. v. Trustees of the Alabama & Cincinnati R. R. Co.]

purporting to be endorsed by the State, were wrongfully and fraudulently, and without authority, endorsed by the Governor of the State, and were had and obtained by the present holders thereof, in fraud of the law, which authorized an endorsement to be made, and with full knowledge of the facts which invalidated their issue; 13th, that if said four hundred bonds are not fraudulent and void in the hands of the present holders, or if the fraudulency and nullity of said bonds can not avail these respondents, as a full defense to the bill, then that under and by the statute of the State authorizing the endorsement, the lien of the State was created and exists, and that the same statute which created the lien prescribed the remedy for a default, in payment of interest on the endorsed bonds, and they say that the remedy so prescribed is exclusive of any action in behalf of the holders of such endorsed bonds against the property of said company for such default, "and these respondents plead said statute as a bar to the bill," &c.; . 15th, and they submit that the said endorsed bonds, not having been legally negotiated by said company, the title thereto passed to the purchasers at the said bankrupt sale; . . 17th, they submit that the State is a necessary party to the bill, because as they say, it affects the rights and liabilities of the State, and as the State can not be made a party defendant, they plead these facts in bar to this suit, and as the State is not a party complainant, they plead the non-joinder in abatement.

Defendants demurred to the bill, and, for cause, assign: 1st, that it appears by the bill, that the bonds of the East Alabama and Cincinnati Railroad Company were endorsed by the State of Alabama, to the amount of four hundred thousand dollars; that the said corporation became bankrupt; that its franchise, and the whole of its property, was sold and conveyed to purchasers under the orders of the United States District Court, sitting in bankruptcy; that the franchise and property, so sold and conveyed, are of less value than one hundred thousand dollars, and wholly insufficient to satisfy the lien of the State for accrued and unpaid interest upon said endorsed bonds; that the lien of the State was created and exists by virtue of the act of the general assembly of Alabama; that the lien of the State is exclusive; that the statute which enacted the lien prescribed the remedy for a default in payment of interest by said company, and that said remedy is exclusive of all other remedies for such default, against the property and franchise in the hands of defendants as purchasers, subject to the lien of the State; 2d, that the act of the general assembly, under which the bonds of the company were endorsed by the State,

[Kelly et al. v. Trustees of the Alabama & Cincinnati R. R. Co.]

declares what shall be done in case of default in the interest, and excludes any action by the endorsed bondholders, or in their behalf, except the remedy against the auditor for failure to prove his warrant on the treasury for the sum necessary to meet the interest on any bonds endorsed by the State, whenever said interest is not provided for by the company, and to pay such interest when due; 3d, that the statute, under which the bonds of the company were endorsed by the State, annulled all liens in favor of bondholders, created after the twenty-first February, 1870, as to any and all such bonds endorsed by the State of Alabama, and the State took the exclusive lien for the payment of interest upon such bonds by the company, and the exclusive remedy against the company for any default in payment of such interest; 4th, that the State put itself by the statute between said company and the bondholders; made itself liable for the company's default, in providing for the payment of interest, requiring the auditors, in such case, to draw their warrant upon the treasury, and to pay such interest when due; and it provided a remedy against said company for such default, and that remedy excluded all other remedies against said company or its property; and that exclusive remedy is now in the State, and this bill can not therefore be maintained for default in payment of interest on such endorsed bonds; 5th, that the complainants have no lien for unpaid interest; 6th, that the State is not a party to this suit; 7th, that by the endorsement of the bonds by the State, and the negotiation of them as such endorsed bonds, the provisions of the act of twenty-first February, 1870, under which the endorsement was made, became the terms of the contract between the parties, and no remedy for default in payment of interest by the company can be had against the said railroad company or its property, except that remedy which is provided in the statute; 8th, that the complainants are not trustees for the State of the lien which the State has for the payment of the principal and interest of the unendorsed bonds."

The cause came up before the chancellor, at chambers, on the motion of complainants to have a receiver appointed to take charge of the property, and on the demurrers of respondents, and on the motion to dismiss the bill for want of equity. Upon hearing of the same the demurrers and motion were overruled, and the register was ordered to ascertain a suitable person to be appointed receiver. The register in due time certified that one R. J. Thornton was a suitable person for such appointment, and, on the fourteenth of

[Kelly et al. v. Trustees of the Alabama & Cincinnati R. R. Co.]

December, 1877, said Thornton was so appointed, and gave his proper bond therefor.

Respondents now assign for grounds of error : First, over-ruling the motion to dismiss for want of equity; second, overruling each of the several grounds of demurrer ; third, in appointing a receiver.

WADE KEYES and VIRGIL S. MURPHEY, for appellants.

W. H. BARNES & SON, *contra.*

No briefs came to Reporter.

BRICKELL, C. J.—1. The bill does not aver the man-ner or the time of the creation of the East Alabama and Cincinnati Railroad Company, as a body corporate; nor is it shown whether it derived existence and authority from a special act of incorporation, prior to the constitution of 1868, or whether it was formed under the general laws of the State. Nor is there any averment of its specific corporate powers. The averment is general, that on the first day of July, 1870, when the bonds were issued, and the deed of trust for their security executed, it was a body corporate, existing under the laws of the State, and created for the purposes of con-structing and operating a railroad from Eufaula to Gunters-ville. Judicial notice cannot be taken of the charter of a private corporation, nor of its corporate power or capacity, if it derives existence from such charter, by which we intend a special act of incorporation.— *City Council of Montgomery v. M. & W. Plank Road Co.* 31 Ala. 76. If it is shown to have been formed under the general laws, which authorize the formation, and define the powers of corporations, these are public laws, of which notice must be taken, and of course to these the power of the corporation must be referred.

2. There are, however, powers at common law incident to corporations, and these they must be presumed to pos-sess, in the absence of special restraint by their charters, or by statute. Of these, is the capacity to purchase alien lands and chattels. "Independent of positive law, all corporations have the absolute *jus disponendi* of lands and chattels, neither limited as to objects nor circumscribed as to quantity. They may execute a mortgage to secure a debt."—2 Kent, 281, (marg.); Green's Brice's Ultra Vires, 123-130. Corporations created for the construction of railroads, in the absence of limitation or restraint by statute, have power to borrow money, and to make bonds, bills, or promissory notes, for its repayment; and also power to mortgage its property, real or

[Kelly et al. v. Trustees of the Alabama & Cincinnati R. R. Co.]

personal, as a security for such evidence of debt. These are powers necessary and proper to enable it to accomplish the purposes of its creation, and are regarded as incidental or implied, though not expressly conferred by the charter, or act of incorporation.—*Richards v. Railroad*, 44 N. H. 127; *Commonwealth v. Smith*, 10 Allen, 448. In the consideration of the demurrer, and the motion to dimiss the bill for want of equity, notwithstanding the powers conferred on the corporation are not stated specifically, the objects of its incorporation being shown, it must be presumed it had the incidental powers, conferred by the common law, unless these are restrained, or taken away by statute. If it has these powers, the bonds and deed of trust, which is in its legal effect a mortgage, are not *ultra vires*, but subsisting debts, and a valid security.

3. It is expressly recited in the deed of trust, that the bonds were prepared with the view of obtaining the indorsement of the State, under the act of February 21st, 1870; and that the lien it creates shall be subordinate to the lien the State would under that act acquire by the endorsement. The proposition, which seems to be the foundation of the motion to dismiss, and several of the causes of demurrer, specially assigned, is, that the act forbids the creation of a lien by mortgage or otherwise, in favor of the bondholders, to co-exist with the lien of the State, and thus restrains or abrogates the power the corporation would otherwise have to execute a mortgage, or assignment as a security for the payment of the bonds. The statute, (Pamph. Acts 1869–70, p. 149), certainly intends, that when the State, by an indorsement of the bonds of a railroad company, incurred liability for the principal and interest of such bonds, the act of indorsement should operate a lien in favor of the State, having priority of all other liens, though it was not declared by deed or other writing. It also provides remedies which may be pursued for the protection of the State, in the event the company should make default in the payment of principal or interest. But we cannot discover anything in its terms or spirit, leading to the conclusion that a prohibition of corporate power to mortgage, in subordination to the lien of the State, was intended. On the contrary, it seems clear no such prohibition was contemplated. The bonds the governor is empowered to endorse, are the *first mortgage bonds* of the company, implying they are, or may be, secured by mortgage. Again, it is said the indorsement of the State shall constitute a *first lien, without a deed from the company ;* and the only prohibition imposed, is not against the creation of any other lien or mortgage, than that the statute creates

in favor of the State; but the creation of any other, which would have priority over, or come in conflict with that of the State. The contract and liability of the State, created by the indorsement, is that of suretyship for the railroad company, indemnity and protection against the liability the statute intends to afford. This is its whole scope and operation. A principal debtor may well, and it is not of infrequent occurrence that he does, create a security and indemnity for his surety, and at the same time create a security by another instrument, or in another mode, for the protection of the common creditor. Each is at last, unless narrowed and limited by its express terms, a security for the debt, and may enure to the benefit of the surety, or of the creditor. A court of equity, will so enforce and appropriate them that the debt shall be paid. The payment of the debt is the purpose for which they are created, and that being accomplished, ease is given to the surety, while the legal and equitable claims of the creditor are satisfied. It is not a lien or a security for the default of the State the deed of trust affords; but a lien or security for the default of the corporation, the principal debtor, which alone can involve the State in loss.

4. The remedies the statute affords, are intended for the protection of the State; and it may be, if it was pursuing these remedies, that it could not be embarrassed by the interference of the trustees to foreclose the deed of trust; or such interference might be an election, by the bondholders authorizing it in that case, to rely on the deed of trust, in preference to a reliance on the liability of the State as endorser. But the State is not pursuing the statutory remedies it could have pursued, nor does it intervene to stay, or claim protection against the foreclosure of the deed of trust; and it is not for the corporation, or those who have succeeded to its place merely, to assert the rights of the State, to the delay of a common creditor, pursuing a clear, equitable remedy to which he is entitled. Statutes are construed in reference to the common law, and the presumption is, that no other innovations on common law principles, than such as are clearly expressed, are intended.—1 Kent, 464; 9 Bac. Ab. 244. No principle of construction will lead to the conclusion that the statute we are considering derogates from the common law power of the corporation to mortgage, or to assign, for the security of the bondholders. Restraint of such power is not essential to the protection of the State, except so far as the statute in express terms restrains it—the prohibition of the creation of any lien having priority over or coming in conflict with that of the State. The creation of another lien, sub-

ordinate to it, for the security of the common debt, which, if enforced, is in relief of the State, is not inconsistent with, or in conflict with the lien of the State. Attempts to employ it so as to embarrass the State would, if necessary, be restrained; or it may be, would operate to discharge the State from liability. These are considerations which are not involved in the inquiry, as to the power of the corporation to create the lien, but which arise after its creation, and its enforcement is sought. The remedies the statute affords are given to the State, and the State alone can pursue them. They cannot be resorted to by the bondholder, or by trustees, or assignees for his security, and cannot exclude the right he or they have at common law, or in equity, not derived from statute, to foreclose the deed of trust. If the statute had extended to the bondholders, or to trustees, or assignees, for their security the remedies it provides, without a negative, express or implied, of the right to the equitable remedy, the statutory remedies would have been regarded as cumulative, and it would have been matter of election with them to pursue the one or the other.—Sedgwick on Stat. & Con. Law, 342.

5. The State cannot be made a party defendant to an action at law, or a suit in equity, and this is a sufficient answer to the objection because of the omission to make it a party.—Constitution of 1875, art. 1, sec. 15. The presence of a prior mortgagee, or of a party having a prior lien, who is not subject to the jurisdiction of the court, when the validity of his incumbrance is not disputed, may be dispensed with; and in the present case must be dispensed with of necessity.—*Hogan v. Walker*, 14 How. 37. The demurrer and the motion to dismiss, were properly overruled.

6. The resolution of the board of directors, under which the deed was executed, does not, in express words, authorize the creation of a lien upon the incomes, profits, or earnings of the road. It does, however, authorize its creation on "all the real and personal property now, or hereafter, belonging to the company." The earnings, incomes and profits of a railroad, derived from its management and operation, are personal property. Words broader or more comprehensive, embracing all existing, or future acquired personal property, could not have well been used. It is but giving these words their natural effect, to construe them as embracing the earnings and profits of the railroad. So construing them, the deed of trust in the creation of a specific lien on the earnings and profits, was not in excess of the authority conferred by the resolution. The trustees do not stand as mortgagees who have neglected to take a pledge of, or a specific lien on

rents and profits. They have a lien on the incomes, profits, and earnings of the road co-extensive with that on the road, and the other property of the company embraced in the deed; the right to take and appropriate them to the payment of the mortgage debt, so far as it is past due and unpaid.

7-8. The bankruptcy, and a practical dissolution of the corporation, the execution of the deed of trust, the negotiation of the bonds, the accumulation of unpaid interest to an amount exceeding the value of the property conveyed by the deed, the sale by the assignees in bankruptcy, of the equity of redemption of the corporation, the possession and protection of the incomes, profits, and earnings of the road so far as completed, and the use of its rolling stock, and other personal property, by the purchasers for their exclusive benefit, are facts not controverted. The validity of the bonds is disputed by the answer, and it is averred that they were obtained by the present holders in contravention, and in fraud of the act of February 21st, 1870. If this be true it may avoid the indorsement of the State, but it does not relieve the corporation from its primary liability as principal debtor. The case thus presented is a plain one for a claim to a receiver. The general rule in equity is, that if a railway corporation becomes insolvent, makes default in the payment of the principal or interest of its bonds secured by mortgage, and the mortgage property is an inadequate security, a receiver will be appointed, on a bill for foreclosure. Especially will the court commit the encumbered property to the custody of a receiver, if, in addition to the insolvency of the corporation, and the inadequacy of the security, the only fund for the payment of the debt is the earnings of the road, and these are being misapplied.—High on Receivers, §§ 376-390. Courts of equity are very reluctant to appoint receivers over any and all corporations. In *Adley v. Whitstable Company*, 17 Vesey, 324, (marg.) Lord ELDON, speaking on this subject, said: "I do not conceive it to be impossible to lay hold of their property, and with regard to the power of the court there is no distinction, whether the subject is a fishery or an inheritance of another nature. The court must deal with it as well as they can, to prevent a failure of justice altogether; and if, by resisting the demands of justice they expose their property to ruin, the mischievous consequences must be attributed to themselves." And further speaking of the necessity which might rest upon the court of carrying on the business of the corporation, he said: "Yet that difficulty would not prevent the decree, though it might induce the court to modify it, so as to do as little

injury as possible." The subjection of corporate property and franchises to the custody of a receiver, is a suspension in a greater or less degree of the powers of the corporation, in addition to devolving on the court often the continuance of the business of the corporation, and this is the explanation of the greater reluctance to appoint receivers over them and their property, than in the case of individuals. Railway companies are more than mere private corporations—they are in many respects, and for many purposes *quasi* public bodies, invested with large and peculiar franchises and privileges, and owing important duties, and under varied responsibilties to the public. Hence, courts of equity in the appointment of receivers over them act with extreme caution, and require a clear case of right and of pressing necessity to induce their interference.—*Meyer v. Johnston*, 53 Ala. 237. The present is not properly the case of a claim of a receiver, who is to interfere with the exercise of corporate power, and whose custody will suspend in any degree corporate functions. The corporation is practically dissolved, a bankrupt, and for more than three years has had no organization, and there has been an entire non-user of its powers and franchises. Its property has passed into the possession of the defendants, who are using it for their exclusive benefit. Their possession and use of the property will alone be disturbed by the appointment of a receiver. The propriety of the appointment must depend upon the principles governing applications for receivers in the aid of foreclosure of mortgages. The insolvency of the mortgagor, the inadequacy of the mortgage security, and the inability of the mortgagee to enter and take possession, the mortgage debt being unpaid in whole, or in part, and there being a specific lien on the incomes, rents and profits, it cannot be doubted, as a general rule, require the court to appoint a receiver.

Affirmed.