[Savannah & Memphis Railroad Co. et al. v. Lancaster et al.]

# Savannah & Memphis Rail Road Co. et al. v. Lancaster et al.

### Bill in Equity to foreclose Mortgage or Deed of Trust.

1. *Complainants' title and right to relief; how must be stated.*—Matters essential to complainants' title and right to relief, must be shown by clear and unambiguous averments in the stating part of the bill ; and though, on demurrer, the court might not feel bound to refuse, it cannot be required to seek explanation of a defective allegation in the stating part of the bill, by reference to a clear averment of the same matter in a subsequent part ; yet in the absence of allegation in the stating or any other part of the bill, of material facts or transactions on which the title depends, the description or designation of plaintiffs "as trustees," or as "certain holders of bonds and coupons," and the like, is insufficient.

2. *Bill for foreclosure ; what not demurrable.*—A bill to foreclose a deed of trust to secure bonds issued and put in circulation by a corporation and made payable to bearer, is not demurrable, because it fails to allege to whom such bonds were negotiated in the first instance, or how much was paid for them, or when they were issued.

3. *Same.*—Where a deed of trust or mortgage, made by a railroad company to secure an issue of bonds and interest thereon, provides that in default of payment of interest for six months, the principal should also become due, a bill by the trustees for foreclosure, averring such default in payment of interest, is not demurrable, because it fails to allege that the interest coupons were presented for payment at the office or agency at which they were payable.

4. *Bond; what does not destroy negotiability of.*—A provision in a bond for payment of money, payable to bearer, issued and put in circulation by a corporation, that the bond might "be registered and made payable by transfer only on the books of the company," does not of itself make such bonds non-negotiable by mere manual transfer.

5. *Deed of corporation; what sufficiently executed.*—Where a conveyance or deed purports on its face to be the deed of the corporation, and recites that it has caused its corporate seal to be thereto affixed, and its president to sign the same, and the deed is properly witnessed or acknowledged, this is a sufficient execution ; and the validity of the deed is not impaired by the fact that the president signed the deed in his own name with the word "president" added, or that the secretary likewise signed his own name to it in the same way.

6. *Resolution authorizing issue of bonds and mortgage; what sufficient compliance with.*—A resolution of the board of directors of a corporation, authorized an issue of its bonds, prescribing only the amount and denomination of the bonds, what date and rate of interest they should bear, and that they should be payable in American gold coin, free from government taxes, in New York, and also authorized the execution of a deed of trust on all the road, franchises and property of the company, for the security of the bonds, without prescribing any other terms which the deed should contain.   All the specified conditions were observed.   The bonds were made payable twenty years after date ; and in the deed of trust it was further provided that a foreclosure might be made to pay the whole debt, whenever default in payment of interest had continued for six months :   *Held*—As to the terms of the trust deed, other than those prescribed in the resolution, it must be presumed that it was intended to be in such form and with such stipulations as are usual in such instruments ; and as they are usually so drawn as to provide a foreclosure for the whole debt, on

Vol. LXII.

[Savannah & Memphis Railroad Co. et al. v. Lancaster et al.]

default of payment of principal or interest, the mortgage was not executed contrary to directions, or without authority.

7. *Railroad corporation; power of to borrow money to build its road, and secure same by mortgage.*—A railroad corporation, unless restrained by statute, has the *implied* power to borrow money to construct its road, and to secure the debt thus created by mortgage on its property.

APPEAL from Lee Chancery Court.

Heard before Hon. N. S. GRAHAM.

Bill for foreclosure of trust deed by the appellees, who describe themselves as follows : Your orators, Robert A. Lancaster and John F. Tanner, *as trustees for divers parties holding* and owning certain bonds and past due coupons thereof, of the Savannah and Memphis Railroad Company, under and by virtue of a deed of trust executed and delivered to them by said railroad company for the trusts and purposes therein mentioned; and Abby Harrington, Mason Young, John J. Thomas, Hiram Sibley, Hiram W. Sibley, William A. Hadden, and William W. Carson, certain holders of said coupon bonds and of past due coupons thereof, and *cestui que trusts* of the trustees, all of whom are over the age of twenty-one years, and who join in this bill of complaint for the equal benefit of themselves and of all the holders of the first mortgage bonds of said company, secured by said deed of trust." The bill then alleges that the Savannah and Memphis Railroad Company. "prepared and executed the first mortgage bonds of said company under its corporate seal and the signatures of its President, Sam'l G. Jones, and its Secretary, Sam'l E. Holt, for one thousand dollars each, payable to the bearer, on the 1st day of May, 1890, in American gold coin, and bearing interest at the rate of eight per cent. per annum. It is further alleged that these bonds, to the amount of four million one hundred and sixty thousand dollars, had been issued and negotiated by the company.

A copy of the bond is made an exhibit. They each recite that "the Savannah & Memphis Railroad Company is indebted to the bearer of this bond in the sum of one thousand dollars, in American gold coin, which the said company promises to pay on the 1st day of May, in the year eighteen hundred and ninety, at the office or agency of the company, in the city of New York, with interest thereon from the 1st day of May, 1870, at the rate of eight per cent. per annum, free from United States government tax, payable semi-annually in gold coin as aforesaid, at the said office or agency on the first day of November, and the first day of May of each year, upon the presentation and surrender of the annexed coupons as they severally become due. . . . . These bonds may be registered and made payable by transfer only on the books of the company." The corporate seal of

the company is attached to each of these bonds, and they are also signed by the president and secretary respectively; but the exhibit does not contain any copy of the coupons, or refer to them, otherwise than by the recital in the body of the bond.

It is then averred "that the said Savannah and Memphis Railroad Company, for the purposes of securing the payment of the principal and interest of said bonds to the holders thereof, did also, on the 18th day of August, 1870, prepare, execute and deliver to the said Robert A. Lancaster and John F. Tanner, under its corporate seal, and the signatures of Sam'l G. Jones, its President, and Sam'l E. Holt, its Treasurer, a mortgage deed, constituting them trustees for certain trusts therein specified, conveying to them in trust the property of the railroad company of every kind and description." This mortgage is made an exhibit to the bill, and recites that it is executed under the following resolution, adopted by the board of directors on the 8th day of August, 1870: "Resolved, That the President is hereby authorized to issue the first mortgage bonds of the company for four million one hundred and sixty thousand dollars, covering the road, franchise and property of the company from Girard to Tuscumbia, Alabama; said bonds to be issued in sums of one thousand dollars each, in American gold coin, payable in New York; interest at eight per cent., payable semi-annually, in gold, free of government tax, and to secure the payment of said bonds and the interest thereon, the president is authorized to execute a deed of trust on the road, franchises and property as above, said bonds bearing date May 1st, 1870." The mortgage then recites that bonds to the amount authorized by this resolution have been prepared and are ready for negotiation; provides that the trustees shall endorse each bond, to identify it as one entitled to the benefits of the mortgage; declares that it is executed for the purpose of enabling the railroad company to negotiate the bonds for the purpose of raising money with which to complete and equip its railroad; and conveys all the property and future acquisitions of every description to the trustees therein named, "for the equal benefit and security of all of the persons and bodies corporate who have or may become holders of the said bonds, or of any of them, without reference to the time when they respectively may have been or may be issued and negotiated." This mortgage provides that in case default shall be made in the payment of the principal or interest of said bonds for the space of six months, "then it shall be lawful for the said trustees, or the survivor of them, or their or his successor, either personally or by attorney, to sell and dispose of the

railroad and other property therein conveyed, and to make and deliver to the purchaser of the property so sold, good and sufficient titles, applying the money realized, first to the payment of the interest then due on said bonds, and then to the payment of the principal, whether due or not at the time of said sale." This mortgage, or trust deed, commences as follows : " This indenture, made the 18th day of August, A. D. 1870, between the Savannah & Memphis Railroad Company, a railroad corporation duly created by and under the laws of Alabama, party of the first part, and Robert A. Lancaster and John F. Tanner, of the city and State of New York, trustees upon certain trusts hereinafter specified, of the second part," &c. It concludes as follows : " *In witness whereof*, the said party of the first part has caused its corporate seal to be hereto affixed, and these presents to be signed by its president, Samuel G. Jones, and its secretary, Samuel E. Holt, in the presence of James M. Muldon and William D. Dunn, who subscribed their names thereto as witnesses on the day and year first above written.

SAMUEL G. JONES, President. [L. S.]
SAMUEL E. HOLT, Secretary. [L. S.]
R. A. LANCASTER.      [L. S.]
JOHN F. TANNER.      [L. S.]

Sealed and delivered in the presence of James M. Muldon, William D. Dunn."

The bill further avers the acceptance of the trust by the appellees, the issue and negotiation of the whole amount of the bonds authorized by the resolution, and a default in the payment of the interest on the same for more than six months.

The bill then avers the issue and sale by the company of a large amount of second mortgage bonds, bearing interest at the rate of seven per cent., dated on the 1st day of January, 1873, and secured by a deed of trust covering the same property, with Henry G. Marquand and Richard Irwin, Jr., as trustees. The railroad company and the second mortgage trustees are made parties defendant, and a foreclosure of the first mortgage is prayed. On petition, certain holders of stock of the railroad company, and of certain second mortgage bonds were allowed to become parties defendant. They filed a demurrer to the bill on the grounds—1. That the mortgage sought to be foreclosed " does not appear to be signed at its foot by the contracting party (The Savannah and Memphis Railroad Company), or its agent having written authority, nor is the seal of said company attached thereto." 2. "That the bill fails to show or state that the railroad company ever delivered any of the bonds alleged to be secured by the mortgage, to any person, partnership or corporation,

capable of holding or receiving such bond, or the name of such person, partnership or corporation, to whom such bonds were delivered, or the time or place of such delivery." 3. "That the bill fails to show that the complainants, other than the trustees, own or have title to any bond or coupons secured by the mortgage sought to be foreclosed, or that they ever purchased any such bonds directly from the railroad company, or that any such bond was registered and transferred to them, or either of them, on the books of the company." 4. "That the bill fails to show that the president of the railroad company ever issued any bond entitled to the security of the mortgage sought to be foreclosed, although it is shown by said mortgage that that officer alone had power to issue bonds and mortgage to secure them under the resolution copied in said mortgage, which is the only authority for the issue of the bonds, for the payment of which this suit is brought." 5. "That the bill fails to aver that any of the holders of said bonds ever presented or offered to surrender any of the coupons attached, at the office or agency of said company, in the city of New York, or at any other place, or to show any good reason why such presentation and offer to surrender was not made." 6. "That the bill fails to show that the railroad company ever received any money, or anything of value, as a consideration of said bonds, and fails to show any power or authority in said company to issue bonds without any consideration." 7. "That the bonds in suit bear on the face interest at the rate of eight per cent., and the bill fails to show any authority of said railroad company to issue bonds at a rate of interest greater than seven per cent." 8. "That the bill shows on its face that Sam'l G. Jones, President, and Sam'l E. Holt, Secretary, had no power or authority to execute the mortgage sought to be foreclosed, the only power conferred being on the president, and that only on the property then owned by the company, and that neither said Jones or Holt had any power to make the principal of said bonds fall due before the time expressed on their face, to-wit, on the 1st day of May, 1890, or to fall due on default of payment of the interest."

The Chancellor overruled each and all of these demurrers, and the defendants bring the case here by appeal.

G. D. & G. W. HOOPER, for appellants.—The bill must show complainants' claim or title to relief with accuracy and clearness, and the matters necessary to relief must appear, not by inference, but by direct and unambiguous averment. 35 Ala. 70 ; 26 Ala. 405. The averments of a bill must be taken most strongly against the pleader.—16 Ala. 429 ; 39

Ala. 138; 35 Ala. 309; 30 Ala. 352. The bill failed to show any title to the bonds in Harrington and the other complainants, other than the trustees; the averment that they are *holders* is not an averment of title in them. The contract of the company provided that these bonds should be transferred only on the books of the company, and the bill utterly fails to show or allege any such transfer. The bill should have alleged the time and place of the execution and delivery of the bonds, for the bonds bear date May 1st, 1870, and the mortgage is executed to secure them, " without reference to the time when they respectively might have been, or might be issued or negotiated," thus showing that the bonds might have been issued after that date. The date of the execution of the contract was material, and the failure of the bill to show it is fatal.—*Reel v. Overall*, 39 Ala. 138. The bill does not show that the holders presented any of the coupons for payment, and by express condition of the bonds the interest is payable only on the presentation and surrender of the coupons. The mortgage sued on was not properly executed. The Code required that " conveyances for the alienation of lands must be signed at their foot by the contracting party or his agent, having written authority." In this case, the contracting party is the railroad company, and its name is not signed to the deed as required by the statute.—*Hendon v. White*, 52 Ala. 597. But this mortgage is not effective as to either personal or real estate.—26 Ala. 591; 28 Ala. 507; 21 Ala. 72; 24 Wend. 442. The bill fails to show any consideration for the bonds, and the company had no authority to issue bonds without any consideration. Such an act was *ultra vires*. A corporation has only such powers as are delegated to it, in express terms, or arise by necessary implication.—See 1 Stew. 279; 5 Port. 279; 30 Ala. 461; 32 Ala. 76; 36 Ala. 319; 41 Ala. 510. A promissory note given for the performance of such a contract is void, and will not be enforced by the courts.—39 Ala. 319. By the act of January 14, 1856, railroad companies were authorized to borrow money at as high a rate as seven per cent., and were expressly restrained from borrowing at a higher rate, and a contract to pay a higher rate was *ultra vires* and void. The case of the *Bank of the U. S. v. Owens*, 2 Peters, 527, is conclusive on this point. See, also, 3 Vesey, Jr., 539; 8 Ohio, 257; 11 Ohio, 498; 12 Ohio, 544. There is no room for the doctrine of estoppel. *Bank v. Dunkin*, 54 Ala. 479; 9 Peters, 467.

W. H. BARNES & SON, *contra.*—The only necessary parties were the trustees, the *cestui que trust* being only *proper* parties, and need not have been joined in the bill at all.—68

[Savannah & Memphis Railroad Co. et al. v. Lancaster et al.]

Penn. St. 37; 5 Gray, 162; 16 Gray, 407; 4 Stew. & Por.
447; Jones on Railroad Securities, § 361; 1 Wood, 368; 20
Wall. 117; 11 Wall. 459. It is not necessary to aver pre-
sentment of the past due coupons at the place designated.
If the suit is prematurely brought, it is matter for a plea in
abatement.—Jones on Railroad Securities, § 334; 2 Woods,
574; 54 Penn. St. 127; 6 Ala. 701; 2 Ala. 342; 2 Stew. 234.
The description of the complainants is sufficient to show
their right to become parties to this bill. The bonds are
made payable to bearer, and the parties being set forth as
holders is equivalent to an averment of possession. Posses-
sion is *prima facie* evidence of title.—27 Ala. 208; 36 Ala.
708; 17 Ala. 566; 40 Ala. 271. The question of usury can-
not be raised by demurrer, but must be made the subject of
a plea. The railroad company had authority to borrow
money for purposes germane to its business. And moreover,
if this were a proper presentation of the issue of *ultra vires*,
it could not avail in this case; the contract being executed on
the part of the holders of the bonds as purchasers.—Green's
Brice's *Ultra Vires*, (1 Am. Ed.) 372, 619; Field on Corp.
286 to 310, and notes; 6 Otto, 258; 47 Ind. 407; 63 N. Y. 62;
Potter on Corp. 2 Vol. § 508; 17 Barb. 378; 4 John. Ch. 370;
16 Cal. 255; 5 Fla. 110.

MANNING, J.—Plaintiffs are described in the introduc-
tory part of their bill as follows: "Your orators, Robert A.
Lancaster and John F. Tanner, *as trustees for divers parties
holding* and owning certain bonds and past due coupons
thereof, of the Savannah and Memphis Railroad Company,
under and by virtue of a deed of trust executed and delivered
to them by said railroad company for the trusts and purposes
therein mentioned; and Abby Harrington, Mason Young,"
and others named, "*certain holders of said coupon bonds* and
past due coupons thereof, and *cestui que trusts* of the trustees
aforesaid  .   .   .   who join in said bill of complaint for the
equal benefit of themselves, and of all the holders of the first
mortgage bonds," aver, allege, &c. And appellants (who
were defendants below), assuming that there is nothing more
in the bill showing title in the plaintiffs to the subject in con-
troversy, insist by demurrer, that this is not a sufficient state-
ment of title or interest in plaintiffs to enable them to main-
tain the suit.

Description is not, in pleading, equivalent to averment.
And it was not necessary, in setting forth in the beginning of
the bill who the plaintiffs were, to explain in the same breath
their connection with or relation to the matters in respect of
which the suit was brought.—1 Dan. Ch. Pl. & Pr. (4th Amer.

Ed.) 359. That is the office of the stating part, or premises, of the bill, (Sto. Eq. Pl. § 27,) which should " contain a clear and orderly statement of the facts on which the suit is founded, without prolixity or repetition."—Code of 1876, § 3761. Says Judge Story: " Every material fact to which the plaintiff means to offer evidence ought to be distinctly stated in the *premises.* . . . A general charge or statement, however, of the matter of fact is sufficient; and it is not necessary to charge minutely all the circumstances which may conduce to prove the general charge."—Sto. Eq. § 28. " The rules of pleading require," says the Supreme Judicial Court of Massachusetts, " that every material averment that is necessary to entitle the plaintiff to the relief prayed for, must be contained in the stating part of the bill, and this is a useful rule for the preservation of form and order in the pleadings. This part of the bill must contain the plaintiff's case and his title to relief, and every necessary fact must be distinctly and expressly averred, and not in a loose and indeterminate manner to be explained by inference, or by reference to other parts of the bill. The defendants are not bound to answer any averment not contained in the stating part of the bill." This was delivered in answer to the argument " that the defect may be supplied, or the meaning of the stating part of the bill be explained by the averments in the charging part of the bill.'—*Wright v. Dame,* 22 Pick. 59. This strictness is, perhaps, extreme. We should not feel bound to refuse, though we ought not to be required to seek, explanation of a defective allegation in the stating part by reference to a clear averment of the same matter in a subsequent part of the bill.—*Houghton v. Reynolds,* 2 Hare, 264. But when no allegation at all is made in the stating or any other part of the bill, of material facts or transactions on which the title of those bringing suit depends, it would be too great a relaxation of the wholesome and too little heeded rules of the pleading, to take as a substitute the mere description or designation of plaintiffs " as trustees," or as " certain holders of bonds and coupons," or by other additions which imply that such facts or transactions had occurred. " It is a general rule that whatever is essential to the rights of the plaintiff, and is necessarily within his knowledge, ought to be alleged positively and with precision."—Sto. Eq. Pl. § 255. And this court has emphatically said: " The matters essential to complainant's right to relief, must appear not by inference, but by clear and unambiguous averment." *Duckworth v. Duckworth,* Ex'r. 35 Ala. 70. Indeed, the more direct and clear the allegations of such a pleading are, the freer it is, generally, from prolixity and repetition.

Upon examination of the bill before us, we find that it distinctly alleges in the stating part the execution by the railroad company of the deed mentioned as the first mortgage, to Lancaster and Tanner, by which they were (it is alleged) constituted trustees of the property described in it. Their trusteeship, therefore, is sufficiently averred.

And they, the trustees, were the only necessary parties plaintiff to the suit. Though any of the bondholders might *pro interesse suo*, become parties thereto, it was not essential that they should.—*McElrath v. P. & S. R. R. Co.*, 68 Penn. St. 37; *Shaw v. Norfolk, &c. R. R. Co.*, 5 Gray, 162; *Swift v. Stebbins*, 4 Stew. & P. 447. And since the bill avers that the bonds, each for the sum of $1,000, which the trust deed was executed to secure, were issued to the extent of more than $4,000,000, and the other complainants, who need not have made themselves co-plaintiffs, come in as "certain holders of said coupon bonds and past due coupons thereof, and *cestui que trusts* of the trustees aforesaid," and on behalf of the other bondholders as well as of themselves, we think the demurrer, so far as it objects to the right of plaintiffs to maintain the suit, upon the allegations of the bill, was properly overruled.

The bonds were designed to be put in circulation and pass from hand to hand, by delivery merely, for which reason they were made payable to no person by name, but to "bearer." No rule of law requires it to be shown by averment to whom such bonds, or any of them, were negotiated in the first instance; and it would rarely be possible for subsequent holders, who received them in the course of business, after they were put in circulation, to know to whom they were first delivered. The provision that the bonds might be "registered and made payable by transfer only on the books of the company," did not itself make them non-negotiable by mere manual transfer; it was only a promise which entitled those who should become holders of them at any time to have them changed from that character, and converted into *registered bonds*, transferable only upon the books of the company. Neither the clause referred to, nor any thing else in them, made it necessary to show who purchased or became bearers of them in the first instance.

The objections that it is not shown how much was paid for the bonds, or when they were issued, is equally, and for like reasons, without foundation.—Jones on Railroad Securities, § 210. The case is not at all like that of *Reel v. Overall*, 39 Ala. 138. If there was any thing irregular or illegal in those particulars, it devolved on the defendant to set it up and show it.

Nor need the averment that the company had failed for more than six months to pay the interest, also show further, that presentation had been made of the coupons for payment at the office or agency of the company where they were made payable. In regard to past due promissory notes, payable at a particular place, the law is well settled that if the defendant has suffered any loss by a failure to present them there, he must establish it in defense. And the Supreme Court of Pennsylvania has held that the same rule is applicable in an action for the whole amount of certain railroad bonds that should regularly have matured at a long future day, with interest to be paid semi-annually in the meantime, at a place designated, but subject to an agreement that if default be made three times, successively, in the payment of such interest, the principal also should then be presently due.—*Philada. & B. R. R. Co. v. Johnson*, 54 Penn. St. 127.

The sections of the Code which require conveyances to be "signed at their foot by the contracting party or his agent having a written authority," and dispense with seals to them, cannot have been intended to embrace conveyances by corporations, which, being unable to write and have signatures of their own, have always executed such instruments by causing their seals to be affixed to them. To have a seal for such purposes has not only been the uniform usage of these bodies politic, but the right "to use a common seal, and to alter the same at pleasure," is expressly conceded to them by our statutes.—Code of 1876, § 2019 (1767). And the act "to provide for the creation and regulation of railroad companies in the State of Alabama," approved December 29, 1868, under which the defendant company in this cause was, we presume, organized, provides that "all deeds made by such company shall be signed by the president, under the seal of the company."—Acts of 1868, p. 467, § 15. It cannot impair the validity of the deed that the name of the secretary was also subscribed to it, apparently in attestation of the affixing of the seal.

The objection that in this transaction of raising money and executing bonds and a mortgage to secure repayment of it, the railroad company acted *ultra vires*, and that, therefore, payment of the bonds and foreclosure, or sale of the mortgaged property, will not be enforced, cannot be sustained. The authorities referred to, which hold that corporations created for other and different purposes, may not lend money and do business after the manner of a bank, are not applicable to a case in which the corporation borrows money needed for its legitimate purposes, and gives securities therefor to the lender. To do this is one of the *implied* powers of such

bodies.—*In re Patent File Co.*, L. R. 6 Ch. 83 ; *Curtis v. Leavitt*, 15 N. Y. 9 ; *Monu'l N'l Bank v. Globe Works*, 101 Mass. 57 ; *Hays v. Galion Gas Light Co.* 29 Ohio St. 330 ; Jones on Railroad Securities, § 5 ; *Kelly et al. v. Barnes et al.*, 58 Ala. 489.

If in agreeing to pay eight per cent. per annum interest, the lawful regular rate between individuals, upon the sum lent, instead of seven per cent., there was an usurious intent to violate the law concerning that matter, the contention thereupon is not to be raised by a demurrer to the bill.

We cannot concur in the proposition that the bonds and mortgage, or either of them, were not executed in conformity with the intention of the company, and are, therefore, invalid. Apart from the question whether they are not, indeed, the acts of the company itself, performed in the only manner in which it could execute such instruments, the resolution of the board of directors, prescribed only the denomination and amount of the bonds, what date and rate of interest they should bear, and that they should be made payable in American gold coin, free from government taxes in New York. It did not specify any time or event when they should mature. And in providing for securing their payment, by a deed of trust, " covering the road, franchise and property of the company from Girard to Tuscumbia, Alabama," it did not prescribe any of the other terms the deed should contain. All of the conditions specified were observed. And the additional provision in the deed, that a foreclosure sale of the property might be made to pay the entire debt, whenever the semi-annual interest thereon should remain six months unpaid, is no more at variance with the resolution than is the clause which makes the bonds otherwise mature on the 1st day of May, 1890, twenty years after their date. The presumption would consequently be, that the trust deed was to be completed in such form and with such stipulations as instruments of that kind ordinarily contain. And a " mortgage is *usually* so drawn that it may be foreclosed as soon as there is any default in the payment of any installment, either of principal or interest," secured thereby, and such a provision " is not considered a penalty, but an agreement as to the time when the debt shall become due."—2 Jones on Mort. § 1181, and cases there cited. It does not, therefore, appear that the mortgage was executed contrary to directions, or without sufficient authority.—*Skinner v. Dunn*, 9 Porter, 305 ; *Vanada v. Hopkins*, 1 J. J. M. 203 ; *Peter v. Farnsworth*, 15 Vermont, 155 ; Rawle on Cov. of Title.

We find no error in the decision of the Chancellor overruling the demurrer, and his order thereupon is affirmed.