[City Council of Montgomery v. Wright.)

# City Council of Montgomery v. Wright.

*Action for Damages against Municipal Corporation, for Personal Injuries caused by Defects in Streets.*

1. *Judicial notice of municipal charter.*—The charter of a municipal corporation is a public statute, of which the courts will take judicial notice.

2. *Averment of corporate character and name.*—In an action against a municipal corporation, described by its corporate name, it is not necessary to aver in the complaint that the defendant is a body corporate, since the court will take judicial notice of that fact, and of the identity of the defendant as such corporation.

3. *Averment of corporate duty to keep streets and side-walks in repair.* When the duty of keeping "the streets and highways in repair" is imposed on a corporation by its charter, it is only necessary to aver the existence of this duty by way of inducement, when declaring against the corporation for damages resulting from its breach; and this is done with sufficient certainty by the general allegation, "which the defendant is bound to keep in repair."

4. *Action against municipal corporation, for damages; notice of defect in street or side-walk.*—To maintain an action against a municipal corporation for damages, on account of injuries resulting from its failure to keep the streets and side-walks in proper repair, the plaintiff must aver and prove actual notice of the defect in the street or side-walk, or facts from which constructive notice will be inferred; and such constructive notice may be inferred from the notoriety of the defect, and its continuance for such length of time as to raise the presumption that the proper municipal officers did in fact know, or with due vigilance and care ought to have known it.

5. *Duty to keep streets and side-walks in repair.*—The duty of keeping its streets and side-walks in repair, when imposed by statute on a municipal corporation, is unquestioned, and may exist without express statutory provision; and this duty extends to the whole width of those thoroughfares, and requires that they shall be kept in proper condition for safe travel by night as well as by day.

6. *Negligence; when question of fact, or of law.*—When the facts are disputed, or when different conclusions may be drawn from the undisputed facts, negligence *vel non* is a question of fact for the determination of the jury; but, when the facts are undisputed, and the inference to be drawn from them is clear and certain, it is a question of law.

[City Council of Montgomery v. Wright.]

7. *Contributory negligence; when not imputed to plaintiff.*—When the evidence shows that the route selected by plaintiff, at the time he was injured by a fall caused by a "wash-out" in the side-walk, was the route ordinarily travelled with safety by all persons on foot going in that direction, that the side-walk at that point was wide enough for safe passage on the inside of the "wash-out," and that there was no side-walk on the other side of the street; contributory negligence can not be imputed to him, because he had knowledge of the defect in the side-walk, and did not select a different route.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES E. COBB.

This action was brought by William Wright, against "the City Council of Montgomery," without other descriptive words; and was commenced on the 5th November, 1881. The complaint was in these words: "The plaintiff claims of the defendant ten thousand dollars as damages, and plaintiff avers that there is in the city of Montgomery a public highway, called *Bell* street, leading from *Goldthwaite* street in said city west to the corporate limits thereof, which the defendant is bound to keep in repair; and that that portion of the north side of said *Bell* street, lying between *Holt* and *Hanrick* streets, was negligently suffered by the defendant to be out of repair, whereby plaintiff, travelling therein, and using due care, on, to-wit, the night of October 22d, 1881, was hurt; to plaintiff's damage as aforesaid, and therefore he sues. And plaintiff claims of defendant the further sum of ten thousand dollars as damages; and plaintiff avers that it was the duty of defendant to keep the streets of the city of Montgomery in repair, but that it negligently suffered a street in said city, called *Bell* street, to be and remain in bad repair, and unfit for the safe use of citizens and others in walking along the same, for a long space of time; and especially that it negligently suffered the side-walk on the north side of said street, at a point between *Hanrick* and *Holt* streets, to be and remain in such bad repair that the same was dangerous in its use in walking, by reason of a hole so left by it in the edge of said side-walk, about five feet from the north edge thereof, and more than two feet in depth, and in the part commonly used by those walking along said street; and that while plaintiff was walking along said street and side-walk, carefully and prudently, on the night of October 22d last, he, without fault or neglect of his own, stepped with one foot into said hole so negligently let and suffered by defendant to remain in said side-walk, and, by reason thereof, fell with great violence; whereby he was caused great pain and suffering, for a long time, and was permanently injured and disabled from the performance of his work, and has become liable for a large sum of money for nursing, medical attendance and medicines, necessary to relieve his pain, injury and suffering sustained by said fall; all of which

was suffered by reason of defendant's negligent failure to keep and maintain street in proper repair for the safe use of citizens and others, as it was its duty to do; to plaintiff's damage," &c.

The defendant demurred " to the complaint, in short by consent," on the following grounds as specified : 1st, " because the complaint does not show that the defendant is a corporation ; " 2d, " because the complaint does not show that it was the defendant's duty to keep said street or side-walk in repair ; " 3d, " because the complaint does not aver facts showing that it was defendant's duty to keep said street or side-walk in repair ; " 4th, " because the complaint does not show that *Bell* street is a street established by defendant ;" 5th, " because the complaint does not aver or show that said street or side-walk was suffered to remain out of repair for an unreasonable time." The court overruled the demurrer, and the defendant then pleaded, " in short by consent—1st, the general issue; 2d, want of ordinary care by plaintiff; 3d, contributory negligence by plaintiff." The trial was had on issue joined on these several pleas.

On the trial, a bill of exceptions was reserved by the defendant, in which the facts are thus stated : " The plaintiff offered evidence tending to show that *Bell* street was a street in the city of Montgomery laid out by the defendant, having a road-way of some fifty feet in width, and a side-walk for foot passengers, laid out and worked by the city, only on the north side of the street at the point where the injury occurred ; that no side-walk was laid out or worked by the city on the south side of said street for some distance above and below the said point; that the said side-walk on the north side was laid out about ten feet wide, and was of that width for some distance above and below that point, but had been washed down to a width of about seven feet for several feet above and below that point; that this side-walk was situated some three feet, or more, above the road-way ; that at a point on said side-walk about midway between *Holt* and *Hanrick* streets, there was a *wash-out* on the outer edge of said side-walk, about eighteen inches wide, extending about two feet into the side-walk, and about three feet deep, down to the level of the road ; that this *wash-out* had been in existence, in the same condition, for more than two years ; that the distance from the inner edge of the *wash-out* to the fence on the northern edge of the side-walk was from five feet six, to five feet eight inches ; that along the side-walk, at points east and west of this *wash-out*, was a beaten path, or foot-way, made by persons walking singly, which passed near to the outer edge of the side-walk, but next to and within the inner edge of the *wash-out ;* that this was the only foot-way, and it was universally used as a foot-way by all persons coming into or going out from the city along *Bell* street, which was one of the prin-

cipal streets used by persons going out of the city towards the west, or coming into it from the country adjacent to the city on the west; that the space between the *wash-out* and the fence on the north was about five feet and six or eight inches; and that the space between said path and the fence, some eighteen inches or two feet, was grown up with grass, being unused and untrodden, and sloped up towards the fence, so as to render it inconvenient to walk on it. He offered evidence, also, tending to show that not only was there no side-walk worked by the city on the south side of the street, but that the space for the side-walk, inside of the road-way, was not practicable for persons walking, and was never used by them; also, that on October 22d, 1881, he went to visit a friend who lived on the south side of *Bell* street, a square or two beyond the point of the *wash-out*, and passed along the street and side-walk on the north side of the street, passing said *wash-out*, as he frequently did in visiting his said friend; that this was in the afternoon, and in the day-light, and he then saw the condition of said side-walk; that he remained at his friend's house until it was nearly dark, and then set out to return home in the city; that it began to rain, and was very dark; that he crossed over to the north side of the street, and ascended to the embankment of the side-walk by a bridge from the street, made for that purpose, at a point west of the *wash-out*, where the road-way was about eighteen inches below the side-walk, feeling with his stick before him for the *wash-out*, which he knew of, as there was no light, but, placing his cane beyond and across the edge of the *wash-out*, he stepped with one foot into the *wash-out*, and fell down, breaking his hip bone near the joint," and sustaining other serious injuries, which were particularly described. "Several witnesses testified, that they had seen the street hands often at work on the road-way, repairing it, but that no work had been done by them, for years, on the side-walk near the point indicated as the *wash-out*. The defendant showed that said *wash-out* was at a point near the suburbs of the city, within one hundred and fifty yards of its western limits, and introduced evidence tending to show that that part of the city was not thickly populated, nor greatly frequented by foot passengers; and introduced evidence tending to show that the road-way of *Bell* street was well repaired in the spring of the year 1881, and that a part of the side-walk on the north side of said street, several squares east of the *wash-out*, was put in good repair. The defendant's street overseer testified, that he had worked on the side-walk at the point indicated as the *wash-out*, but could not say when it was last done before the injury happened; that he did not remember he had done it in the spring of 1881, but had repaired it, and filled up the said *wash-out*, after the injury happened. The defendant

[City Council of Montgomery v. Wright.]

introduced, also, evidence tending to show that the whole space between the *wash-out* and the fence, some five feet six to eight inches, was level, and reasonably safe for walking; also, that though no side-walk was laid out on the south side of the street, yet on the south side, from the house which plaintiff left to come into the city, there was a safe and practicable foot-way, along which persons could and did safely walk, coming in the direction which plaintiff came, and which extended to a point some distance beyond and east of said *wash-out;* and that a path crossed the road-way thence, to a point on the side-walk north where it was safe and level, and well worked all the way into the heart of the city.　　There was no evidence of notice to the defendant, or its officers, of any defect in the said side-walk, and the street overseer testified that he did not know its condition; but there was evidence, also, tending to show that it was in the same condition for months, as before stated, and that the street hands had worked the road-way, while in that condition, without working the side-walk at that point.

"This was all the evidence," and the court thereupon gave the following charges to the jury, at the instance of the plaintiff: 1.　"That it is the duty of the corporation to keep the streets of the city in repair; and this includes the side-walks for persons on foot, as well as the road-ways; and it is no answer to a complaint for injury caused by a defect in the side-walk, that there was a sufficient space thereon by which a safe passage might have been made, unless the injury might have been avoided by proper prudence on the part of the person injured, or unless negligence can be imputed to him as contributing to cause the injury."　2.　"That the attempt of a visitor to a friend in the city to walk home at night, on a side-walk which has been left in bad repair by the city, and which is in the same condition in which it has been kept for months, and which is the only one in the city used by all persons having occasion to go in that direction, is not negligence in him; and if a person so walking is injured, by reason of a defect in the side-walk, he is entitled to recover damages, unless his negligence in walking contributed to the injury."　3.　"That it is as much the duty of the city to keep the side-walks in the suburbs of the city in a safe condition for the use of passengers, as those in the heart of the city; that while the authorities may have a discretion in the matter of elegance of pavements, or in the matter of pavements or no pavements, yet they have no discretion in the matter of safety; and it is an absolute duty to keep all the side-walks in the city in a reasonably safe condition for the use of passengers, whether in the body of the city or near its limits."　To each of these charges an exception was duly reserved by the defendant, and they are now assigned as error,

[City Council of Montgomery v. Wright.]

together with the overruling of the demurrer to the complaint.

CLOPTON, HERBERT & CHAMBERS, for appellant.—1. The complaint is fatally defective in several particulars. (*a*) It does not aver that the defendant is a municipal corporation, nor give its corporate name. The name of the corporation, as the court must judicially know, is the *City of Montgomery;* and although the corporation may sue or be sued by the name of its city council, the complaint must aver that the suit is so brought, thereby showing that the corporation is the real defendant. (*b*) The complaint should aver, also, that the duty of keeping its streets in repair is enjoined on the corporation by its charter, or should set out the special powers granted, so that the court may see that the duty is devolved upon it. In this country, there is no common-law obligation resting on such corporations to keep their streets and highways in repair, and it only exists by statute.—2 Dill. Mun. Corp. § 785. The only averment of the complaint on this point—"which the defendant is bound to keep in repair"—is merely inferential, or the statement of a conclusion, and is wholly insufficient. (*c*) The complaint neither avers notice of the defect to the corporation, nor states facts from which notice may reasonably be presumed; and this was a necessary averment.—*Wightman v. Washington*, 1 Black, 39, 52.

2. The first charge given to the jury, at the instance of the plaintiff, is not direct and certain, but evasive, and calculated to mislead the jury; and is therefore erroneous.—*Cothran v. Moore*, 1 Ala. 423; *Solomon v. The State*, 28 Ala. 83. There was no obstruction, or structural defect, in the side-walk; and if the space between the *wash-out* and the fence was sufficiently wide, level and commodious, to enable persons to pass with safety and convenience by the exercise of ordinary care, this was a defense to the action.—*Campbell v. City Council*, 53 Ala. 624; Dill. M. C. § 789. This charge is obnoxious to the further objection, that it was calculated to mislead the jury as to the *onus* of proof on the question, whether the injury could have been avoided by proper prudence. Although contributory negligence is a defense, the *onus* of which is on the defendant; yet it was incumbent on the plaintiff to show, not only a defect in the side-walk, but that the defect rendered the sidewalk unsafe and inconvenient for passage by persons using ordinary care.—*Pennington v. Woodall*, 17 Ala. 685.

3. The second charge given assumed as facts, that the sidewalk was in bad repair, that it had been in the same condition for months, and that it was the only one used by all persons having occasion to go in that direction; as to which several matters there was conflicting evidence. The charge, therefore,

invaded the province of the jury, and was erroneous.—*Skains & Lewis v. The State*, 21 Ala. 218; *McKenzie v. Br. Bank*, 28 Ala. 610; *McGonegal v. Walker*, 23 Ala. 361; *Henderson v. Marx*, 57 Ala. 169. It was erroneous, also, in instructing the jury that, as matter of law, on the facts stated, the plaintiff was not guilty of negligence. Negligence is, generally, a mixed question of law and fact; and it is not necessarily a question of law, whenever the facts are undisputed. Where the negligence consists in the failure to perform a clear legal duty, or where the conduct of all prudent men, under given circumstances, is so notoriously uniform that this uniformity becomes a rule of law, negligence *vel non* is a question of law; but, when the facts are doubtful or disputed, or, though undisputed, are such that reasonable men may fairly arrive at different conclusions, the inference to be drawn from them is a question for the jury, and the court has no power to determine it —*Detroit Railroad Co. v. Steinburg*, 17 Mich. 99, 118; *Penn. Railroad Co. v. Ogier*, 32 Penn. St. 71; *Briggs v. Taylor*, 28 Vermont, 183; *Ireland v. Oswego*, 13 N. Y. 533; *Railroad Co. v. Stout*, 17 Wallace, 657; *Patterson v. Wallace*, 1 McQueen's H. L. Cases, 748; *Beers v. Hous. Railroad Co.*, 19 Conn. 566. Again, notice of the defect to the defendant was necessary, to make out the plaintiff's case; and though notice may be inferred from other facts proved, it is an inference of fact to be drawn by the jury.—*Noble v. Richmond*, 31 Gratt. 271. As to the condition of the street, and the length of time the defect had existed, from which the inference of notice was to be drawn, the evidence was conflicting; and the charge was erroneous in ignoring the question of notice.

4. The plaintiff was not entitled to recover, unless he used ordinary care to avoid the accident; yet the charge restricts his duty to the exercise of ordinary care in walking—"unless his negligence *in walking* contributed to the injury." For this reason, the charge is erroneous.—*Dill v. Camp*, 22 Ala. 249. The plaintiff had full knowledge of the defect in the side-walk, and saw its condition when he passed in the afternoon; and in attempting to pass it in the dark, when he might have passed with safety and convenience along the path-way on the south side, he did not use ordinary care, and took on himself all risk of accident.—*President v. Dusouchett*, 2 Indiana, 586; *Bruker v. Covington*, 69 Indiana, 33; *Richmond v. Courtney*, 32 Gratt. 792. Knowledge of a defect in a highway is not, generally, conclusive evidence of negligence in attempting to pass it; yet, if the defect is such that a person of ordinary prudence, having knowledge of it, would not under the circumstances attempt to pass it, then the plaintiff was not justified in attempting to do so.—*Reed v. Northfield*, 13 Pick. 94; *Thomas v. Telegraph*

27

*Co.,* 100 Mass. 156; *Fox v. Glastenburg,* 39 Conn. 204; *Hubbard v. Concord,* 35 N. H. 52. Whether the plaintiff exercised ordinary care in remaining at his friend's house in the suburbs of the city until nearly dark, knowing that he would pass on his return over a defective side-walk, and in crossing from the south to the north side of the street, when it was so dark that he could not see the defect, and might have avoided it by continuing along the footway,—should have been submitted to the jury, and was withdrawn from their consideration by this charge, which limited their inquiry to negligence or care in the single matter of walking along the side-walk.

SHAVER & HUTCHESON, with whom was H. C. SEMPLE, *contra.*
1. The charter of the city of Montgomery is a public statute, of which the courts will take judicial notice.—*Smoot v. Wetumpka,* 24 Ala. 112; *Case v. Mobile,* 30 Ala. 538. The charter expressly provides, that the corporation may sue and be sued by the name of the "City Council of Montgomery," the name by which it is here sued; and it enjoins on the corporation the duty of keeping its streets in repair, as this court has decided. *Campbell v. City Council,* 53 Ala. 528; *City Council v. Gilmer & Taylor,* 33 Ala. 116; also, *Smoot v. Mayor of Wetumpka,* 24 Ala. 112; 2 Dillon's Mun. Corp. § 1017. These facts being judicially known, it was not necessary that they should be averred in the complaint; and the general averment—"which the defendant is bound to keep in repair"—conforms to the precedent from which the count was copied.—Chitty's Pleadings, by Perkins, 16th Amer. ed., 575. Express notice to the corporation, of the defect or obstruction in the street or highway, is only required where the defect has suddenly happened, as by the falling of a tree in the night, and sufficient time has not elapsed to discover it; and in all other cases, it is sufficient to aver, as here, long continuance of the defect, or other facts from which notice will be inferred.— *Ward v. Jefferson,* 24 Wisc. 342; *Rockford v. Hildebrand,* 61 Illinois, 155; *Chicago v. Fowler,* 60 Illinois, 322; *Springfield v. Doyle,* 76 Illinois, 202; 2 Dill. M. C. § 790. For these reasons, and on these authorities, the complaint was sufficient, and the demurrer to it was properly overruled.
2. The first charge of the court, given at the instance of the plaintiff, asserts the proposition, that the duty of keeping the streets and side-walks in a safe and convenient state of repair, extends throughout their whole width. This proposition is manifestly correct, and is fully sustained by authority.—Shear. & Redf. on Negligence, § 385; *Hall v. Manchester,* 40 N. H. 410; *Bacon v. Boston,* 3 Cush. Mass. 174. In this case last cited, the street was forty feet wide, and the defect extended only

fourteen inches into the side-walk, leaving ample space for safe passage by the side of it; but the court held that this was no defense to the action. If the charge was not clear and explicit, or was calculated to confuse or mislead the jury, an explanatory charge should have been asked.—1 Brick. Dig. 344, §§ 129-30.

3. The second charge given was supported by the evidence adduced by the plaintiff, and it was his right to request instructions based on that view of the evidence which was favorable to him.—*Connerly v. P. & M. Ins. Co.*, 66 Ala. 444; *Garrett v. Garrett*, 27 Ala. 687; *Wolf v. Parham*, 18 Ala. 441; *Farley v. Smith*, 39 Ala. 38. The facts were stated hypothetically, and it was competent to state them in that manner.—*Railroad Co. v. Jones*, 56 Ala. 507; and cases cited in 1st Brick. Dig. 336, § 14. The charge does not undertake to state what is negligence, but only that the facts recited do not, *per se*, constitute such negligence on the part of the plaintiff as would relieve the defendant of liability in this case. The substance of the charge is, that plaintiff, or any other person going in that direction, might lawfully and properly use the principal thoroughfare in that part of the city, and attempt to walk along the only side-walk of that street, although he knew there was a defect in it; and that ordinary care did not require that he should have selected another route. As to the correctness of this proposition, see *Erie City v. Schwingle*, 10 Har. Penn. St. 384; *Smith v. St. Joseph*, 45 Mo. 449; *Humphreys v. Armstrong*, 56 Penn. St. 204; *Trow v. Railroad Co.*, 24 Vermont, 487; *Railroad Co. v. Armstrong*, 52 Penn. St. 282. If the plaintiff was using ordinary and proper care at the time of the injury, his right of action can not be defeated because he imprudently attempted to pass along this side-walk, or failed to keep along the south side of the street, or to select some other route.—*Railroad Co. v. Donahue*, 75 Illinois, 106; *Railroad Co. v. Mason*, 51 Miss. 234; *Railroad Co. v. Elliott*, 28 Ohio St. 340; 11 Hun, N. Y. 333.

SOMERVILLE, J.—The charter of the city of Montgomery is a public statute, of which the courts will take judicial notice. It provides that the corporate authorities may sue and be sued by the name of "The City Council of Montgomery." The court must, therefore, judicially know the legal identity of the defendant corporation in this action with that of the municipality known as the City of Montgomery.—1 Dill. Mun. Corp. § 83; *Kelly v. Trustees A. & C. R. R. Co.*, 58 Ala. 489; *City of Selma v. Perkins*, 68 Ala. 145.

It is not required by the rules of pleading, that litigants should specially aver facts of which the courts commonly take judicial cognizance. Hence, it was unnecessary to allege in the

[City Council of Montgomery v. Wright.]

complaint that the defendant was a body corporate.—2 Chitty on Plead. (16th Amer. Ed.) p. 13.

The city charter expressly devolved on the corporate authorities the duty of keeping "the streets and highways" *in repair.* It was only necessary to aver the existence of this duty, by way of inducement; and this was done with sufficient certainty in the complaint, by the general allegation, "which the defendant is bound to keep in repair."—*S. & N. Ala. Railroad Co. v. Thompson,* 62 Ala. 494, 500; *Ala. & Fla. R. R. Co. v. Waller,* 48 Ala. 459.

In order to maintain the present action against the defendant, it is true, as insisted by appellant's counsel, that the plaintiff must aver and prove express notice of the alleged defect in the highway, or facts from which it may be inferred that the corporate authorities were properly chargeable with *constructive notice.* It is well settled, on plain principles, that constructive notice of such defect "may be inferred from its notoriety, and from *its continuance for such length of time* as to lead to the presumption that the proper officers of the town [or city] did in fact know, or with proper vigilance and care might have known the fact." —*Reed v. Northfield* (13 Pick. 94), 23 Amer. Dec. 662; *Harriman v. Boston,* 114 Mass. 245; 2 Dill. Mun. Corp., 3d Ed., § 1024. The facts stated in the complaint were sufficient as an averment of implied or constructive notice.

In view of the foregoing principles, there was no error in overruling the demurrer interposed to the complaint, and the assignment of error based on this action of the court below will be overruled.

The duty of municipal corporations to keep their streets and side-walks in a reasonably safe state of repair for public use is unquestionable, when imposed by positive statute, and may often exist without it.—2 Dill. Mun. Corp. (3d Ed.), § 1017. This duty does not relate to a part, but extends to the *whole width* of these public thoroughfares. If any portion of a side-walk be negligently left in such condition as that pedestrians can not travel over it with reasonable assurance of safety, by night as well as by day, the municipal authorities may be chargeable with a neglect of this duty to its citizens, and the public generally.—*City of Chicago v. Robbins,* 2 Black, 418; Shearman and Redf. Neg. § 385; *Bacon v. Boston,* 3 Cush. 174. The first and third charges, given at the request of the plaintiff, were mere assertions of this principle, and were properly given.

It is insisted that the court erred in giving the second charge requested by the plaintiff, because it undertakes to judicially declare that it was not negligence *per se* for the plaintiff to pass over the side-walk in question at night.

[City Council of Montgomery v. Wright.)

The question of negligence is always deemed one of fact, for the determination of the jury, in all cases of doubt, either where the facts are disputed, or where different minds may reasonably draw different inferences or conclusions. But it is a question of law, to be decided by the court, where the facts are undisputed, and the inference to be drawn from them is clear and certain. This, we think, is the sounder and better rule on the subject.—*Railroad v. Stout,* 17 Wall. 657; 2 Dill. Mun. Corp. (3d Ed.), § 1026. It is expressed by a standard author in the following words: "When the facts are clearly settled, and the course which common prudence dictated can be clearly discerned, the court should decide the case as a matter of law." Shear. and Redf. Negl. § 11. Negligence is said by Mr. Wharton to be a mixed question of law and fact, "to be decided as a question of law by the court, when the facts are undisputed, or conclusively proved, but not to be withdrawn from the jury when the facts are disputed, and the evidence is conflicting." Whart. on Neg. § 420, and cases cited.

The facts in this case are undisputed. The general width of the side-walk, over which plaintiff was walking when injured, was about ten feet, and at the immediate locality of the defect, or "wash-out," it was over seven feet. The *wash-out* was about eighteen inches wide, and encroached upon the outer edges of the side-walk about two feet, leaving between it and the fence a pass-way of about *five and a half feet.* The side-walk was elevated about three feet above the street, or road-way, and the *wash-out* extended from the top of the side-walk all the way down to the street. This defect had existed for many months, and was known to the plaintiff; and the route "was the *only one in the city used by all the people having occasion to go in that direction.:*'

The defense interposed was *contributory negligence* on the part of the plaintiff, based upon an alleged want of ordinary care on his part. It would seem a legal truism to say, that it could not be deemed a want of ordinary care for the plaintiff to do what all other persons, similarly circumstanced, were in the constant habit of doing, without accident or injury to themselves, so far as is disclosed by the evidence, which is set out in the bill of exceptions. There was ample room for the plaintiff to have safely passed between the fence and the *wash-out,* and his very familiarity with the existence of the defect may have been an argument in his own mind inducing him to believe that he could pass it in safety. The possession of a walking-cane, with which he seems to have felt his way along when approaching the defective place, was a circumstance, also, favorable to the prospect of his safety. The plaintiff could not, we repeat, have been guilty of a want of ordinary care, *prima*

*facie, in selecting a route which was ordinarily travelled with safety by all pedestrians going in the same direction.* If he was guilty of contributory negligence at all, it was not in selecting the route, but in the want of care exercised in the act of walking, after he had made the selection.

It is true, as argued, that he may have gone by some other less frequented street, or have followed a pathway, not often travelled, on the opposite side of the same street, where the evidence shows, however, there was no regular side-walk. But this was only a *condition* of the casualty. It is not what is commonly called the "*proximate* cause" of the injury, or what is termed by Mr. Wharton the "*juridical* cause" of it. "The negligence," he says, " to make a *juridical cause*, must be such that, by *the usual course of events, it would result*, unless independent disturbing moral agencies intervene, in the particular injury. It may be negligence in me to cross a railroad," he adds, " on a level, when by going a mile around I could cross on a bridge. Yet this negligence, in case I am struck by a train, is not the juridical cause of the collision, *if I keep a good look-out when I reach the road.*"—Whart. on Neg. §§ 324, 303. The practical construction of a " proximate cause" has been said to be, one from which " a man of ordinary experience and sagacity could foresee that the result might probably ensue."—Shear. and Redf. on Neg. § 10; *McGrew v. Stone,* 53 Penn. St. 436; *Bennett v. Lockwood,* 20 Wend. 223. Or, as otherwise stated, in the case of *defendants* sought to be charged, the principle has been declared to be, "every defendant shall be held to be liable for all those consequences which might have been *foreseen and expected* as the result of his conduct, but not for those which he could not have foreseen, and was therefore under no moral obligation to take into consideration."—3 Parson Contr. (6th Ed.) § 179.

The court did not err, therefore, in charging, as matter of law, that the failure of the plaintiff to select another route, under the facts of this case, did not constitute contributory negligence *per se* on his part.—*Erie City v. Schwingle,* 10 Harris (Penn. St.) 384; *Smith v. City of St. Joseph,* 45 Mo. 449.

We discover no error in the rulings of the Circuit Court, and its judgment must be affirmed.