20. So.2d 110

CITY OF BIRMINGHAM v. COE.

6 Div. 58.

Court of Appeals of Alabama.

Aug. 22, 1944.

Rehearing Denied Oct. 31, 1944.

W. B. Harrison and Geo. P. Bondurant, both of Birmingham, for appellant.

Harrison Kendrick, of Birmingham, for appellee.

540

CARR, Judge.

Appellee brought suit against the City of Birmingham for alleged personal and property injuries occasioned by a tree falling on her automobile while she was traveling one of the streets in said city.

■ Demurrers to complaint were overruled by the trial judge. By agreement of parties pleadings were in short by consent. After verdict and judgment in favor of appellee, appellant filed a motion for new trial, which was overruled. Neither the rulings on demurrers to complaint nor motion for new trial are before this court by assignment of error and therefore will not be considered. Birmingham Ry., L. & P. Co. v. Hinton, 158 Ala. 470, 48 So. 546; Tennessee Coal Iron & R. Co. v. Burgess, 158 Ala. 519, 47 So. 1029; Louisville & N. R. Co. v. Pettis, 206 Ala. 96, 89 So. 201; Halle v. Brooks, 209 Ala. 486, 96 So. 341.

Appellant's prime insistence relates to the action of the trial court in refusing its request for the affirmative charge.

It is not disputed nor denied that appellee was riding in her automobile about 4:30 P. M. on July 30th, 1942, along First Avenue South between 74th and 75th Streets in Birmingham when a large American elm tree became suddenly uprooted and fell into the street across the front part of her car. The elm was of large leaf variety, about thirty years old, and was growing between the sidewalk and curb line of the avenue. After the tree fell it was discovered that its tap root was decayed and rotten, something like two and a half feet underneath the body, and a branch root on the side was also decayed.

The contention of appellee, supported by her witnesses, is that the branch roots were on top of the ground. As related by one witness: "It was a large tree and the sidewalk, you know, came up, and it was—yes, the roots had pushed the sidewalk up and the sidewalk was broken and the tree was sitting up on top of the ground." Within the knowledge of witnesses who lived in the community this condition had existed for about six years. It was stated the tree was leaning toward the avenue and rotten places appeared on the body near the ground.

M. L. Israel, a tree surgeon, employed by appellant, testified that he examined the tree shortly after it fell and found it solid from the ground up. He found the tap root rotten and branch root decayed. In February, prior to the occasion of the injury, he had inspected and trimmed the tree, or it was done under his supervision. He did not remember seeing any roots on top of the ground as recounted by appellee's witnesses.

The testimony with reference to the velocity of the wind on the occasion in question varied in the opinion of different witnesses in the following descriptions: "The wind was blowing strong." "It was blowing pretty hard." "There was a little wind, not what you would call a real hard wind." "A slight wind was blowing."

The meteorologist testified that his records showed the velocity of the wind at the municipal airport at 4:25 P. M. on July 30th, 1942, to be 50 miles per hour. The vantage point from which the record was taken was some distance from the scene of the injury and the witness would not undertake "except by the purest guess" the velocity at 75th Street and First Avenue. The elm was the only tree that fell in the neighborhood, and there was no other damage caused by the wind which was observed.

This in substance is the tendency of the testimony pertinent to the inquiry before us.

Title 37, § 502, Ala.Code 1940, and the editor's notes cited thereto, is explanatory.

of liability of a municipality for injuries to vehicular travel and pedestrians sustained by reason of defects or hazards in streets and sidewalks within the city.

In a skillfully treated opinion, written by Justice McClellan for our Supreme Court, in City of Birmingham v. Carle, 191 Ala. 539, 68 So. 22, 25, L.R.A.1915F, 797, the eminent jurist has this to say: "The general rule is that the public ways for their entire length and width should be reasonably safe for uses consistent with the reason for their establishment and existence. But this general rule is subject to the necessary qualification that the municipal authorities may, in the exercise of a sound and reasonable judgment, fairly and with due regard to the public needs and welfare apportion the surface of public streets to the use of vehicles, to the use of pedestrians, and to ornamentation and beneficial uses resulting from parkways. This practice is quite general, if not universal, in residence sections of the cities, and in such sections of many of the towns, in this state. Where the walkway and the vehicle way are adequate to their respective public needs, there is no reason why an appropriate civic taste may not be expressed by allotting the remaining surface of the streets, between the two ways mentioned, to the commendable ornamentation and public advantage that trees, surrounded by grass plots, will afford. The protection from depredation of trees in streets has long been a subject of express legislative concern. Code 1907, § 7834, and its several predecessors in that line. Such apportionment is of, and consists with, the authority and control the municipalities have conferred upon them in respect of their streets. Judgmatically administered, the particular power and authority under consideration is not without a practical, economic benefit in the way of a sensible avoidance of unnecessary expenditure for paving in our municipalities. Areas so apportioned to tree or grass plots are, of course, still a part of the street; and municipal duty in respect to such areas, as parts of streets, is not suspended or annulled."

■ In general terms the liability of a municipality is governed by the duty and obligation to exercise ordinary and reasonable care to keep its streets and sidewalks in a reasonably safe condition for travel. This imposition does not make the municipality a guarantor of the safe and unharmed travel to the public. The duty is based on the responsibility and accountability of the city to remedy such defects upon receiving actual notice, or after the same has remained for such length of time and under such conditions and circumstances that the law will infer that the defect ought to have been discovered and remedied. City of Bessemer v. Whaley, 187 Ala. 525, 65 So. 542; City of Birmingham v. Martin, 228 Ala. 318, 153 So. 235; Town of Cullman v. McMinn, 109 Ala. 614, 19 So. 981; City Council of Montgomery v. Wright, 72 Ala. 411, 47 Am.Rep. 422.

■ It is also the rule that travelers on streets and sidewalks in municipalities have a right to assume that the passages are safe for travel and no duty is imposed to keep a vigilant watch for defects and obstructions which cannot be observed by the use of ordinary care. 15 Ala.Dig., Municipal Corporations, ☞806(2); City of Birmingham v. Smith, 241 Ala. 32, 200 So. 880.

On reason and authority we find the above stated principles apply if the hazards or defects are occasioned by trees growing on a portion of the street's right of way between the sidewalk and street curb line, as in the instant case. The stated safeguards and protections anticipate safety to the traveling public whether from dangers underfoot or overhead. Warren v. City of Tupelo, 187 Miss. 816, 194 So. 293; 43 C.J. § 1809, p. 1030 (and cases cited in foot note under this section).

■ The insistence that the doctrine of "Act of God" applies to this case cannot avail. Viewing the testimonial evidence and the findings of physical facts, it cannot be successfully urged that this inquiry should have been taken from the jury. Louisville & N. R. Co. v. Finlay et al., 237 Ala. 116, 185 So. 904; Louisville & N. R. Co. v. Finlay et al., 233 Ala. 128, 170 So. 207; Law v. Gulf States Steel Co., 229 Ala. 305, 156 So. 835.

■ The question of actual or constructive notice to the appellant of the alleged defect was, under the evidence, for the jury's determination. City of Montgomery v. Ross, 195 Ala. 362, 70 So. 634; City Council of Montgomery v. Wright, 72 Ala. 411, 47 Am.Rep. 422; City of Bessemer v. Whaley, 187 Ala. 525, 65 So. 542.

542

We are of the opinion, and so hold, that the trial court properly refused the general affirmative charge requested by appellant.

"In dealing with the affirmative charge refused to defendant, the court must look to the strongest tendencies of the evidence for plaintiff." Godfrey v. Vinson, 215 Ala. 166, 110 So. 13, 15. See also, Lord v. City of Mobile, 113 Ala. 360, 21 So. 366; City of Birmingham v. Hornsby, 242 Ala. 403, .6 So.2d 884; McMillan v. Aikin, 205 Ala. 35, 88 So. 135.

The court gave a fair, complete and comprehensive oral charge, explaining to the jury every phase of the law of the case. The three written charges numbered 21, 24 and 26, refused to appellant and made the basis for assignments of error 4, 5 and 6, were either substantially covered by the oral charge or written charges given on appellant's behalf. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix. Wood v. Hacker, 23 Ala.App. 12, 121 So. 437; Burk et al. v. Knott, 20 Ala.App. 316, 101 So. 811.

We have given attentive consideration to all questions presented on this appeal and conclude that the cause is due to be affirmed. It is so ordered.

Affirmed.