## D. W. JOHNSON v. WILLARD JOHNSTON.[1]

June 18, 1948.

No. 34,632.

[1]Reported in 33 N. W. (2d) 53.

*Phillips & Sherwood*, for appellant.
*Ryan, Ryan & Ryan*, for respondent.

MATSON, JUSTICE.

Appeal from a judgment entered upon a verdict for plaintiff in an action to recover damages for personal injuries.

On January 24, 1945, defendant requested plaintiff and one Greer to assist him in moving his fish house from Whitefish Lake to Clark Lake. They loaded the fish house onto defendant's Chevrolet truck, which immediately behind the driver's cab was equipped with an open platform seven feet wide and ten feet long. This platform was three or three and one-half feet high from the ground level. The fish house weighed from 450 to 600 pounds and was four feet wide and six feet long. It was six feet four inches high up to the rounded roof, which added another six inches. When loaded onto the truck, it rested in a horizontal position on one of its narrow or four-foot sides, with the rounded roof pushed against the cab. Plaintiff and Greer testified that there was some ice on the outside of the building when it was loaded. As mounted on the truck, the top side was six feet above the truck platform or approximately nine feet above ground level. Upon arrival at Clark Lake, after some discussion as to the method of unloading, defendant mounted the truck platform and wedged himself between the cab and the fish house roof so that he could push the house to the rear. Pursuant to advance agreement, plaintiff and Greer stood at the rear end of the truck so as to be in a position to ease the house to the ground as defendant pushed it backward. Standing on the truck immediately behind the roof end of the fish house, defendant could not see the two men on the ground, and they could not see him. He said to plaintiff and Greer: "You fellows

take care of the back end and I'll shove it off to you." Taking, as we must, the view of the evidence most favorable to plaintiff, it appears that defendant pushed the fish house backward until it projected about two feet beyond the rear end of the platform, and he then stopped momentarily. While the fish house was so partially overhanging the end of the truck, plaintiff and Greer, who were standing on the ground to the rear, stepped forward and simultaneously reached upward to take hold of the fish house. Plaintiff testified that as he was in the act of raising his arms to take hold of the structure defendant, who was wholly concealed from him, without warning of any kind, suddenly gave the house a hard shove and that as it slid backward and dropped downward the top side of the fish house hit him on the head, knocking him unconscious. Greer said that he caught the fish house just when it overbalanced and that he prevented it from dropping more than about one and one-half feet. He did not see how plaintiff was struck, and he could not recall whether defendant stopped the backward slide of the house momentarily as testified to by plaintiff. He could not recall that defendant said anything by way of warning. Defendant testified that he first pushed the house backward until it was overhanging the platform about three or three and one-half feet and that he did not believe he touched it again. Defendant's motion for a directed verdict was denied. The jury gave plaintiff a verdict of $4,000. Defendant moved for judgment *non obstante* or a new trial. Upon denial of this motion, judgment was entered, and this appeal therefrom followed.

Pursuant to defendant's motion for judgment *non obstante* or a new trial, the appeal from the judgment raises issues as to (1) whether the evidence sustains a finding of negligence; (2) whether any act or omission of defendant was the proximate cause of plaintiff's injury; and (3) whether plaintiff was guilty of contributory negligence as a matter of law.

1. Taking, as we must, the view of the evidence most favorable to the verdict, a motion for a judgment notwithstanding, whether based on negligence or on contributory negligence, should be denied

unless the evidence in support of the verdict, and all reasonable inferences to be drawn therefrom, be so wholly incredible and unworthy of belief, or so conclusively overcome by other uncontradicted evidence, that the want of negligence or the presence of contributory negligence becomes so clear as to leave no room for an honest difference of opinion among reasonable men. Goldfine v. Johnson, 208 Minn. 449, 294 N. W. 459; Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213.

The definite conflict in evidence disclosed by the record clearly raised a question of fact for the jury in determining the issues of negligence and contributory negligence. In the light of the evidence as a whole, the jury could reasonably adopt as a factual basis for its verdict plaintiff's version of how the accident happened, namely, that defendant pushed the fish house to the rear of the truck in two separate movements, and that, after it came to rest upon the completion of the first movement and was projecting about two feet beyond the truck platform, he, without warning, initiated the second movement by giving the fish house a hard shove, so that it suddenly shot to the rear, overbalanced, and pitched downward. Obviously, when the fish house stopped the first time and was projecting only about two feet beyond the truck, it was not occupying a position of precarious equilibrium so that by the simple operation of the law of gravity it represented a danger patent to plaintiff or any other adult. See, Blomberg v. Trupukka, 210 Minn. 523, 299 N. W. 11. We do not have the situation that would have been before us if plaintiff had himself initiated, or actually participated in the initiation of, the second movement by pulling the heavy fish house back toward himself until it would inevitably overbalance and topple downward, as would be apparent to any person of even minimum intelligence. Prosser, Torts, pp. 232-234. Cases cited involving obvious dangers are not in point. See, 4 Dunnell, Dig. & Supp. § 5932. In short, we must stick to the facts before us as revealed by the process of taking the view of the evidence most favorable to the verdict.

2. At the completion of the first movement, what do we then have? The fish house was no longer moving, but was at rest. Its top side was fully nine feet above the ground. It was a large structure which concealed the actors from each other. Defendant could not see whether plaintiff was in position and actually ready to assume his share of the sudden weight which would be precipitated upon him and Greer if the fish house was propelled only a short distance farther to the rear. Neither plaintiff nor Greer could see the movements of defendant if he decided to give the house another push. The house was in a position where it had only a short distance to go before becoming overbalanced. It was heavy and partially covered with ice. It was an object of such bulk, shape, and weight that both plaintiff and Greer needed a firm grip in order to proceed with any degree of safety. Under these circumstances, where the actors were concealed from each other, it was a question of fact for the jury whether defendant in the exercise of ordinary care should have warned plaintiff and Greer before giving the fish house a final shove which was reasonably certain to precipitate its downward plunge.

Where individuals are acting in concert in unloading from a vehicle an object of great weight and of such bulk that they are thereby concealed from each other and cannot coördinate their efforts by visual observation, it is a question of fact for the jury whether one of them, under all the circumstances, owes a duty of giving the others advance warning before performing an act which suddenly deposits on them a weight of such magnitude as will constitute a potential source of serious injury if they are not prepared to receive it. In the light of the foregoing, the evidence reasonably sustains a finding that the failure of defendant to give an advance warning was the proximate cause of the accident.

By the same token, it cannot be said that plaintiff was guilty of contributory negligence as a matter of law. Whether he should have acted more quickly in getting a firm grip on the house, or whether, in the light of the understanding among the three men as to the method to be pursued in the unloading process, he should have reasonably anticipated that defendant would give the house another

shove without advance warning of any kind, were questions of fact for the jury.

The judgment of the trial court is affirmed.

Affirmed.

