RUTH SCATTERGOOD v. ALFRED A. KEIL,
*d. b. a.* GOPHER STATE TREE SERVICE.[1]

March 9, 1951.

No. 35,293.

*Lindahl O. Johnson,* for appellant.
*Brenner, Bouchard, Lycan & Schnell,* for respondent.

CHRISTIANSON, JUSTICE.

This is an action to recover for damage to plaintiff's parked automobile caused by the alleged negligence of defendant in felling a tree. The jury found for plaintiff, and defendant appeals from an order denying his alternative motion for judgment or a new trial.

The accident occurred on March 22, 1948, about 2:30 p. m. Plaintiff's automobile was parked in a private driveway at 440 Ridgewood avenue in the city of Minneapolis. It was standing about 15 feet from a large soft maple tree located on the adjoining property. Defendant, who operates a tree-trimming and removal business, was

[1]Reported in 45 N. W. (2d) 650.

engaged in removing the tree when the top of it fell on plaintiff's automobile, damaging the same in the stipulated amount of $340.50.

The sole question presented is whether the evidence justified the jury's finding that defendant was negligent in the removal and felling of the tree.[2]

Defendant has been engaged in the business of tree trimming and the removal of trees since 1933. He was employed to remove this particular maple tree by the owner of the property adjacent to 440 Ridgewood avenue. The reason for removing it was that there were too many other trees surrounding it. Ernest Keil, defendant's brother, was working for him at the time in question. Their equipment consisted of a power saw, a portable winch with a five-ton pull on it, and defendant's truck.

Plaintiff's daughter-in-law had the use and possession of plaintiff's automobile at the time in question. She testified that after she had parked the automobile on her parents' private driveway she observed defendant's truck drive up to the next-door neighbor's property. She stated that she walked over and asked defendant and his brother if they were going to cut down a tree. They informed her that they were. She then inquired whether it would be necessary for her to move the parked automobile. They assured her that it was not necessary for her to move the car.

Defendant and his brother deny this and state that defendant requested that the car be moved but that the daughter-in-law refused to move it. Viewing the evidence most favorable to plaintiff, as we must, defendant's version of their conversation cannot be accepted as the fact here.

---

[2]Since defendant has not discussed or considered in his brief the trial court's denial of his motion for a directed verdict at the close of plaintiff's case, his assignment of error is deemed to have been waived and need not be considered here. 1 Dunnell, Dig. & Supp. § 366. Likewise, contributory negligence need not be considered, because it was stipulated at the trial that the only issue for submission to the jury was that of defendant's negligence.

Defendant testified that he "looked" the tree over before they started to remove it. He noticed nothing about the tree which would indicate that it was dying. It appeared to be alive to him. There were green buds all the way up the tree. The diameter of the tree was 22 inches at breastheight. Defendant and his brother took no soundings to determine whether the tree was living or dead before they started to remove it. Defendant's brother climbed up and fastened the cable from the winch to the tree about 22 feet from the base of its trunk. A 1½-inch notching was then made at the bottom of the tree, and they grubbed around the roots but did not cut any of the roots. By use of the winch, they drew the cable tight, and just as it became fairly tight the tree snapped off about a foot below where the winch cable had been fastened. As a result, about 15 feet of the top of the tree fell sideways to the ground and upon plaintiff's parked automobile. Defendant then observed that the entire center of the tree, except for a three-inch perimeter, was punky, and that the inside of the tree was "rotten, very rotten," as he described it.

Defendant testified that he had observed trees such as this before where the outside appeared to be perfectly sound but the inside was rotted out. However, he did not realize that such was the case with the tree in question until after it had fallen. He stated that if the tree had been normally alive and healthy it would have fallen toward the street and away from plaintiff's automobile, as he and his brother had intended. When asked on cross-examination under the statute if it was not his business to ascertain beforehand whether a tree was "rotten" or not, he replied:

"If the tree is real bad, we top the tree first and lower it with lines. This particular case we had plenty of room to top the tree and by putting this half-inch cable up there and taking it up we figured we would be able to direct the fall of the tree, which we

would have been able to have done hadn't the tree been rotten, but it broke off and went the wrong way."

Ernest Keil testified that prior to the accident he had noticed that there was a squirrel hole in the vicinity where the pressure had been applied to the tree. After the tree had fallen, he observed that there was just a shell where the squirrel hole was located and that the center of the tree had rotted out. He stated that "you can't really tell * * * looking at the outside of a tree, whether the heart is going to be sound or not," and that you have to use a "bit or some other method" to determine whether the inside of a tree is sound or not.

On appeal, defendant contends that he should be absolved of negligence as a matter of law because the record does not establish that he "was in any way out of line with the customary practice in the felling of this tree."

The answer to defendant's contention is that the record is silent with respect to the customs or practices prevailing in the tree-removal business for the felling and removal of trees. The record discloses only what defendant and his brother did on this occasion. Even if defendant had introduced testimony to the effect that he had done everything that was required to comply with the customary and usual practice in this type of business, that fact would not absolve him of negligence as a matter of law here. As stated by this court in Anderson v. Fielding, 92 Minn. 42, 45, 99 N. W. 357, 358:

"* * * The law of this state is that a negligent act will not be excused by the fact that it is customary. Proof of custom, however, is evidence, but not conclusive, as to whether the act is negligent."

See, 4 Dunnell, Dig. & Supp. § 7049.

In light of defendant's own testimony and that of his brother, the trial court was amply justified in submitting the question of defendant's negligence to the jury. Johnson v. Johnston, 226 Minn. 388, 33 N. W. (2d) 53. Cf. Inabinett v. State Highway Dept. 196

344

S. C. 117, 12 S. E. (2d) 848; Co. Commrs. of Washington County v. Gaylor, 140 Md. 375, 117 A. 864; City of Montgomery v. Quinn, 246 Ala. 154, 19 So. (2d) 529; City of Birmingham v. Coe, 31 Ala. App. 538, 20 So. (2d) 110, where it was held to be a question of fact for the jury whether a city or other governmental agency charged with the care and maintenance of trees on public boulevards or streets was negligent in cases involving damage to automobiles or injuries to persons resulting from the falling of defective trees or dead limbs.

Defendant admittedly was aware of the risks involved in relying solely upon the outward appearance of such a tree. In the exercise of reasonable care, he should have taken greater precaution than he did. At least some other method for the removal of a large tree such as this should have been employed, in view of the residential area in which defendant was working and the fact that plaintiff's automobile was parked only about 15 feet away. Defendant's assurances to plaintiff's daughter-in-law that it was not necessary to move the automobile in and of itself justified a finding of negligence under the circumstances of the case.

It follows that the order of the trial court should be affirmed.

Affirmed.