[Athey v. Tennessee Coal, Iron & Railway Co., et al.]

# Athey *v.* Tennessee Coal, Iron & Railway Co., et al.

## *Damage for Death of a Child.*

(Decided January 14, 1915. Rehearing denied February 14, 1915. 68 South. 154.)

1. *Municipal Corporations; Condition of Drain; Right to Control.*— Where a manufacturing company emptied its waste waster into a ditch, which flowed into the city drainage system, such corporation was not liable for the death of a child caused by its falling into said ditch at a point where it was under the control of the city; the power of control being the test of liability.

2. *Same; Torts; Ditch in Paper Alley.*—Where a ditch was part of the drainage system of the city, and it obstructed an alley that was designed especially for the accommodation of abutting owners and the public generally had not the unqualified right of user that it has in the public streets, the city was not subject to that high degree of responsibility for the condition of the alley as a way, that it would have been under, had such alley been a public street.

3. *Negligence; Torts; Nuisance.*—The city was not liable for the drowning of a child three years old, in a ditch which obstructed an alley, part of the municipal drainage system, but which alley was not thereby rendered unsafe to mature persons, the danger being apparent.

4. *Appeal and Error; Review; Directing Verdict.*—Where plaintiff's whole evidence was not sufficient to take his case to the jury, and the court excluded such evidence on defendant's motion, and at the request of defendant directed a verdict for defendant, the error was harmless, if there was error.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN C. PUGH.

Action by C. C. Athey, as administrator, against the Tennessee Coal, Iron & Railway Company, and the city of Birmingham, for damages for the death of a child by drowning. Judgment for defendant on directed verdict, and plaintiff appeals. Affirmed.

BURGIN, JENKINS & BROWN, for appellant.

PERCY, BENNERS & BURR, and M. M. ULLMAN, for appellee.

[Athey v. Tennessee Coal, Iron & Railway Co., et al.]

SAYRE, J.—Appellant, C. E. Athey, who sued as administrator of Eula May Athey, deceased, for the wrongful death of his intestate, lost his suit because the trial court excluded all his evidence and gave the general affirmative charge in favor of defendants, the Tennessee Company and the city of Birmingham. These rulings present the only question to be considered on this appeal.

The Tennessee Company, after using a considerable volume of water in the proper processes of its steel-mill, discharged it from its premises upon an open space, over which ran several railroad tracks. This water was hot, dirty, and charged with acids to a degree that appears to have rendered the immersion of any part of the body in it for any considerable length of time very disagreeable, but it was not dangerous to life except as a fluid in which one might drown. It was conducted under the railroad tracks for 200 feet or more in a concrete conduit constructed by the corporate authorities of the city of Ensley, now a part of the city of Birmingham. The testimony and the map offered in evidence show that after leaving this conduit and the vicinity of the railroad tracks this water has been directed through an open ditch two blocks to the south and a block and a half to the east along streets and alleys as shown on the map, to a point midway between Twenty-Seventh and Twenty-Sixth streets on Avenue C, across and under which it is carried by means of a concrete sewer or vitrified tile placed there by the same municipal authority. Thence it passes south and east along alleys and across Twenty-Sixth street to a point near Avenue D midway between Twenty-Sixth and Twenty-Fifth streets and some five or six feet inside the southern property line, where it flows into the unguarded entrance to a pipe which carries it underground to

a storm sewer passing along and under the center of the avenue. The course indicated follows, in a general way, the line of natural drainage for surrounding territory, but at the time in question the only water in the ditch issued from the Tennessee Company's premises. The adjacent territory is sparsely built. Three dwellings stand upon the east side of the block contained by Avenues C and D, north and south, and Twenty-Fifth and Twenty-Sixth streets, east and west. These streets and avenues are paved, and at points opposite the intersecting alleys which divide the block into four equal parts, as shown by the map, the sidewalks are so prepared as to permit the passage of vehicles from the streets into the alleys. The unoccupied part of the block, much the larger part, is in a state of nature, except for the rough ditch (five or six feet wide and about three or four feet deep, in which the water flows at the rate of 1½ feet, 170 gallons, a second), which seems to have been dug by municipal authorities to prevent the water from spreading over the surface, and on it grow grass, high weeds, and a few trees. There the children of the neighborhood customarily went to play, as any one might have known who was at pains to investigate. To this block on the occasion in question plaintiff's intestate, a child between two and three years of age, had gone in charge of her sister, seven years old, and was playing along the bank of the ditch, about 2,000 feet from the railroad tracks, and about 100 feet above the unguarded entrace to the pipe when she fell, was carried down into the pipe, and drowned.

(1) Considering, first, the alleged liability of the Tennessee Company, it appears to us that, in the case as we have endeavored fairly to state it, there is one fact that is conclusive against plaintiff's contention. At the place where this accident occurred the Tennessee

Company had no control over the construction, operation, or repair of the ditch. The water had been discharged from this defendant's premises, had been received into, and cared for by, the city's drainage system, so that, on no rule of reason or justice, as we view it, could this defendant be held responsible for its management at a distant point on the premises of another, or in a public place under the jurisdiction and control of the municipal authorities, if it be assumed for the moment that the alley was such a place. Such being the facts, responsibility should be visited upon the person or agency charged with power and duty of maintaining the premises at the place where danger eventuated in disaster. "The power of control is the test of liability."—*Carmichael v. Texarkana*, 116 Fed. 845, 54 C. C. A. 179, 58 L. R. A. 912.

(2) Neither do we think, on the facts already stated and others to be stated, that the other defendant, the city of Birmingham, can be held to answer. The ditch was in an alley, appearing on the map introduced in evidence. Witnesses referred to it as a paper alley. This alley, in its surroundings, can in no proper or legal sense be considered as a highway designed for general travel, or be governed by rules relating to such highways. Evidently it was designed especially for the use and accommodation of the owners of abutting property, and to give the public the same unqualified rights therein that they have in and to the use of public streets would defeat the end and object of its dedication.— *Bagley v. People*, 34 Mich. 355, 5 N. W. 415, 38 Am. Rep. 192. From this it must be inferred that the municipal authorities are not under the same measure of responsibility for the condition of the alley as a way as they are in the case of a public street. While the city may have, undoubtedly has, subject to the property

rights of abutting owners, certain limited rights therein for municipal purposes, such, for example, as it appears to have exercised by collecting the water therein for its more convenient and beneficial disposition, yet there is no public responsibility for its use as a way for general travel. Moreover, this alley was not in actual use as a way for travel. It was no more a way than any other piece of wild and unprepared land, and it was wholly unfit for such use. Nor had anything ever been done to make it fit, or involving the municipal authorities in a recognition or adoption of it as a public way in any sort. Indeed the ditch operated as a practical denial of its user as a highway in any customary mode of such use. It follows that the city is not liable in this case as for an injury caused by a defect in a public municipal street or way.

(3) The remaining ground upon which plaintiff seeks to rest the liability of defendant municipality is that it has maintained or permitted a nuisance or pitfall at a place where its responsible officers knew, or in the exercise of common prudence and judgment ought to have known, that small children would be attracted and drawn into danger. The ditch and the water in it do no harm to neighboring property, except perhaps that in its present condition it destroys the use of the alley as a way, but that use is prospective, and the question of property right is not now at issue. The water is hot, dirty, and acid to a degree, but it is no more inherently dangerous to human life than the same volume of pure and pleasant water at the same place, nor does it offer to children a greater temptation to expose themselves to the danger of drowning. Much is said in briefs, pro and con, concerning the doctrine of the "turntable cases," supposed to be here involved. Some courts repudiate the doctrine; most of those that ac-

knowledge its authority have evinced a marked disinclination to extend it to new and different circumstances. In its original application, and in some analogous cases, it has been accepted as sound law by this court (*A. G. S. R. R. Co. v. Crocker,* 131 Ala. 584, 31 South. 561, *Clover Creamery Co. v. Diehl,* 183 Ala. 429, 63 South. 196), and we do not propose to argue the question of its soundness or review the cases. A recent decision by this court may be cited as persuasive against the asserted application in the circumstances of this case, though the facts there were different from the facts here.—*Thompson v. Alexander City Cotton Mills,* 190 Ala. 184, 67 South. 407. In the case before us, the municipal authorities having gone into the alley to dig the ditch and direct the flow of water without in any wise intending to adopt or improve it as a way for travel, plaintiff's case will be considered without disfavor if we treat the municipality as the owner of the premises. The question then is whether the municipal authorities were guilty of negligence in leaving this ditch, not in a public street or other place to which the public might resort as of common right, unguarded against the intrusions of small children. We think not. We suppose it will not be insisted that, apart from the conditions created by the very tender and wholly inexperienced years of this child, the city has been derelict in the exercise of common judgment and prudence. The ditch is no more a lure to children than a natural stream, involving the same danger, would be in the same place—not as much so. Its dangers, such as they are, to children at all able to take care of themselves are such as may be found on every hand, are not concealed or disguised so as to create a pitfall, and common experience shows that a reasonable prudence may trust their avoidance to the universal instinct of self-preser-

vation. As for children so little advanced as to be unable to recognize the most patent dangers, their inefficiency cannot be allowed to shift the care of them from their parents to strangers, or impose upon the owners of property a duty and liability where otherwise none would exist. This is the doctrine that we gather from the weight and reason of the authorities. Some of the cases are referred to in *Thompson v. Alexander City Cotton Mills, supra.* Others may be found stated in the recent case of *Riggie v. Lens* (Or.) 142 Pac. 346. Many of the cases cited by appellant were cases in which the dangerous condition counted upon constituted a defect in the public street, where plainly a different question is involved. Others may be distinguished on different considerations, while some few, it may be conceded, sustain plaintiff's contention. We believe that, in reaching the conclusion that plaintiff has shown no facts from which the jury were authorized to infer liability on the part of this defendant, we have followed correct principle.

Plaintiff argues that some expressions used in *Sheffield Co. v. Morton,* 161 Ala. 153, 49 South. 772, conclude this appeal in his favor. We were there passing on the sufficiency of the complaint as against a demurrer interposed, and it seems there was considered to be an element of concealed danger in the case stated, something in the nature of a trap, for it is a fact that the mere presence of a wire, though strung upon poles does not give notice at any particular moment that it is charged with a deadly electric current, nor, frequently, that it carries any current at all; and we quoted from the *Slack-Pit Case U. P. Ry. Co. v. McDonald,* 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434, a case usually classed with the original "turntable case," properly so called, in which first-named case the element of conceal-

ment, making a mass of burning coals a pitfall in which children might fall and be burned to death, seems to have been treated as necessary to plaintiff's case. At any rate, in *Sheffield Company v. Morton,* we ruled nothing more than that the defendant, maintaining a deadly wire over premises not its own, nor under its control, would not be heard to excuse itself of all duty in the premises on the ground that plaintiff's intestate, a child resorting to an uninclosed lot or common where people were frequently in the habit of going was a mere trespasser. We do not see that the ruling in that case was at variance with the principle we have thought well to follow in the case at hand.

(4) Finally, it is insisted that the court below committed reversible error in excluding all plaintiff's evidence on the motion of defendants. Appellant relies on *McCray v. Sharpe,* 188 Ala. 375, 66 South. 441. We have frequently reprobated the practice indicated, but as consistently we have refused to reverse on that account where, as in this case, plaintiff's whole evidence is insufficient to take the case to the jury, and the ruling on the motion is followed by the general charge given on defendant's request in writing.—*Wise v. Curl,* 177 Ala. 324, 58 South. 286.

Finding no reversible error, the judgment of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and DE GRAFFEN-RIED, JJ., concur.