[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1179 
The issues in these consolidated appeals are: whether the trial court erred in refusing to give certain instructions as requested by defendant City of Tallassee concerning its liability for the condition of an alley inside its city limits where the collision occurred; whether the evidence was sufficient as a matter of law for the jury to conclude the alley was a public way and that the defendant city was negligent in not making the alley reasonably safe for public travel; whether the amount of damages awarded one of the plaintiffs was excessive; and whether a new trial should have been granted to cross-appellant because of inconsistent verdicts.
On January 10, 1981, a head-on collision occurred on Alber Alley located in the city limits of Tallassee, between a vehicle owned and operated by Hazel Hammock (plaintiff/appellee) and a vehicle operated by Karen Michelle Harris (plaintiff/appellee). The vehicle being operated by Michelle Harris was owned by her father, Frank Harris (plaintiff/cross-appellant). Both Hazel Hammock and Michelle Harris sustained injuries as a result of the accident.
Michelle Harris, as a minor, brought suit against the City of Tallassee by and through her mother, legal custodian and best friend, Joyce P. Harris. Michelle's father, Frank Harris, who was divorced from Joyce Harris, was a plaintiff also. In the complaint, Michelle Harris claimed damages for bodily injuries as well as pain and suffering proximately resulting from the city's negligence or wantonness with regard to the unsafe condition of Alber Alley for public travel. Frank Harris claimed damages for doctor, medical and drug bills incurred in the treatment of Michelle. He also claimed property damages for the automobile that he owned, which was being operated by his daughter at the time of the accident. Hazel Hammock likewise brought suit against the city on the grounds of negligence or wantonness. Both cases were later consolidated for trial on motion by the city.
At trial, Michelle Harris testified that at the time the accident occurred, she had shifted from third to second gear to pull the steep hill on Alber Alley and was travelling between ten and twenty miles per hour. She testified that she never saw the other *Page 1180 
car before colliding with it. Terri Chandler, who was a passenger in the car being driven by Michelle Harris, testified she saw the car only briefly before the collision. Hazel Hammock, who was travelling from the opposite direction on Alber Alley when the two cars struck, testified that she never saw the car Michelle Harris was driving before the two collided. She estimated she was travelling from fifteen to twenty miles per hour on the uphill climb. The accident occurred at the crest of the hill on Alber Alley.
A number of witnesses testified to the public's use of the alley and it was uncontroverted at the trial that the public used the alley for travel in both directions. Residents whose houses bordered the alley testified that prior to the accident, they had seen traffic on the alley, including school buses, police cars, trash trucks, and power company trucks, in addition to private cars.
Lamar Woodham, Jr., a registered professional engineer, appeared on behalf of the plaintiffs. Woodham inspected the accident scene and conducted measurements, studies and experiments. He testified that because the width of Alber Alley was from nine and one-half feet to eleven feet, it was totally inadequate to handle two-way vehicular traffic. He stated that the standards for minimum roadway width required for cars travelling in opposite directions in 1952,[1] as set forth by the American Association of Highway Officials, was twenty to twenty-two feet.
Woodham testified that in order to correct the problem, sound engineering practice would require either adjustment of the geometries of the road or adequate signing to take care of the geometries of the road.
Woodham further testified that the hill on Alber Alley did not meet the minimum standard of sound and accepted traffic engineering practices regarding minimum safe-stopping sight distances at the time of the accident and that this condition had existed as far back as 1952. Woodham stated that if the city had used the Alabama Manual on Traffic Control Devices, it could have corrected the roadway's deficiencies by making the alley one way, and putting up a stop sign on the connector street. He testified that in his opinion, because of the grade of the hill, it was impossible for the driver of either car to have stopped her car without colliding head-on with the other car coming from the opposite direction.
Officer Billy Clayton, a sergeant with the Tallassee Police Department and life-long resident of the city (he was 40 years old at the time of the trial), investigated the accident. He testified that the two vehicles were travelling in opposite directions and estimated their speed on the uphill grade at twenty miles per hour. Although no signs were posted on the alley to regulate speed, the sergeant acknowledged that the general speed limit for the city was thirty miles per hour. He stated that he did not know which of the two parties had the right-of-way at the crest of the hill and testified that he did not find that either party had violated any traffic ordinances. Sergeant Clayton further testified that, in his opinion, the alley was too narrow for two-way traffic, and that the safe-stopping sight distance on the hill was inadequate; he did not recall ever seeing or hearing of a prior wreck on the alley, however.
The jury returned a verdict in favor of Hazel Hammock in the amount of $15,000. The jury also returned a verdict in favor of Michelle Harris in the amount of $40,000, but found against Frank Harris on his claim for medical expenses and property damages.
Frank Harris filed a motion for new trial, and the city filed its motion for judgment N.O.V. or in the alternative for a new trial as to the judgment entered on the jury verdicts in favor of Michelle Harris and Hazel Hammock. The trial court denied Frank Harris's motion for a new trial and the city's motion for judgment N.O.V. Frank Harris and the city appealed. *Page 1181 
 I
The City of Tallassee states succinctly in its brief the legal principle it contends is controlling:
 "[A] city has the inherent authority to determine whether a way will be a street or an alley, whether it will undertake to make it one-way, place signs on it, or otherwise regulate traffic on it and until it acts in its governmental capacity, it cannot be held liable for not exercising that same governmental discretion."
This Court, however, has defined a city's responsibility with respect to the maintenance of its streets as follows:
 "In general terms, the liability of a municipality in a suit of this kind is governed by the duty and obligation to exercise ordinary and reasonable care to keep its streets and sidewalks in a reasonably safe condition for travel. This imposition does not make the municipality a guarantor of the safe and unharmed travel to the public. The duty is based on the responsibility and accountability of the city to remedy such defects upon receiving actual notice, or after the same has remained for such length of time and under such conditions and circumstances that the law will infer that the defect ought to have been discovered and remedied. § 502, Title 37, Code 1940; City of Bessemer v. Whaley, 187 Ala. 525, 65 So. 542; City of Birmingham v. Martin, 228 Ala. 318, 153 So. 235; City of Montgomery v. Ross, 195 Ala. 362, 70 So. 634; City of Birmingham v. Coe, 31 Ala. App. 538, 20 So.2d 110, certiorari denied 246 Ala. 231, 20 So.2d 113."
Jacks v. City of Birmingham, 268 Ala. 138, 142-143,105 So.2d 121, 125-126 (1958). This "duty and obligation to exercise ordinary and reasonable care" and the corresponding liability to fulfill the duty apply to a municipality's care of its alleys. Code 1975, § 11-47-190.[2] We have held "that the duty imposed on cities to keep their public ways free of defects is but the expression of a broader responsibility to exercise ordinary and reasonable care in keeping streets in a reasonably safe condition for travel." City of Prichard v. Kelley, 386 So.2d 403, 405 (Ala. 1980). As this relates to alleys, cities have a duty to exercise reasonable care to keep alleys in a reasonably safe condition for travel, not a duty to maintain alleys in a reasonably safe condition. McQuillin, 19 Municipal Corporations § 54.40 (1967).
The city asserts that the trial court erred in not entering a directed verdict, and likewise in denying its motion for judgment N.O.V., or in the alternative for a new trial, because the evidence was insufficient to impose liability on the city. The standard of review for this Court with regard to a motion for new trial is amply set forth in Jacks v. City of Birmingham, supra:
 ". . . Verdicts are presumed to be correct and no ground of a motion for new trial is more carefully scrutinized or more rigidly limited than that the verdict is against the evidence. And it has been recognized by this court that when the presiding judge refuses, as here, to grant a new trial, the presumption in favor of the correctness of the verdict is strengthened. Smith v. Smith, 254 Ala. 404, 48 So.2d 546; Mintz v. Millican, 206 Ala. 479, 97 So.2d 769. We cannot say that the trial court erred in overruling the motion for a new trial on the grounds that the *Page 1182 
verdict was contrary to the preponderance and great weight of the evidence, which grounds, as we have heretofore indicated, substantially charged that the verdict is not sustained by the great preponderance of the evidence. [Code 1975, § 12-13-11]."
268 Ala. at 143, 105 So.2d at 126 (1958). We do not find the jury's verdicts were against the great weight and preponderance of the evidence; therefore, we find the court properly overruled the city's motion for new trial.
The city further claims that Hazel Hammock and Michelle Harris were guilty of contributory negligence and it was entitled to a directed verdict on this issue. The city further contends that the trial court erred in denying its motion for judgment N.O.V. or in the alternative for a new trial on this issue. The city did not raise the issue of contributory negligence in its motion for directed verdict; therefore, it cannot be repostured in a post-trial motion for judgment N.O.V. or in the alternative a new trial. Rule 50 (b), ARCP; Housing Authority v. Malloy,341 So.2d 708, 709-710 (Ala. 1977). Consequently, the trial court cannot be placed in error for denying the city's motion for directed verdict on the basis of issues not presented in its motion. In any event, the testimony and evidence entered into the record here convinces the court that the question of contributory negligence in this case was a question properly submitted to the jury. See Elba Wood Products, Inc. v. Bracklin, 356 So.2d 119
(Ala. 1978).
Charges 4, 5 and 6 that were requested by the city and refused by the trial court relate to whether the alley had been accepted, dedicated or maintained for public use by the city. The city asserts that the trial court erred by refusing these requested instructions and by instructing the jury that public use for twenty years created a reasonable presumption that the alley was a public way. We disagree that the trial court erred by refusing these instructions and by giving other instructions.
Previously, we have stated that a "public way" is established in one of three ways: (1) by a regular proceeding for that purpose, or (2) by a dedication as such by the owner of the land the way crosses, and an acceptance by the proper authorities, or (3) by general use by the public for twenty years. Sam RaineConst. Co., Inc. v. Lakeview Estates, 407 So.2d 542, 544 (Ala. 1981). See also Jones v. City of Birmingham, 284 Ala. 276, 279,224 So.2d 632, 634 (1969). According to the testimony given at the trial, Alber Alley was conveyed by Mt. Vernon Mills to the city on October 7, 1952, and the deed recorded on December 15, 1952. Further, a number of witnesses testified that the alley had been used by the public as a through street for twenty years or more. In objecting to the trial court's instructions, counsel for the city stated that charges 4, 5 and 6 were correct statements of what must occur before a "city becomes obliged or obligated to maintain a street as well as what was to happen before it would in fact be dedicated." Based on the facts here, the issue for the jury was not whether Alber Alley had been accepted, dedicated or maintained by the city, but rather whether Alber Alley was a "public way" at the time of the accident, thereby imposing the duty on the city to keep it in a safe condition. The trial court properly refused the requested instructions and correctly instructed the jury as to the three methods of establishing a public way.
The city also objected to the trial court's refusal to give its requested charges 8, 9, 21 and 22. Charge 8 states that a city's duty with respect to an alley is dependent on all of the circumstances, including the location and intended use of the alley, while charge 9 provides that the duty of a city to use ordinary care in and about an alley does not impose on the city the duty to make an alley perfectly safe for travel or do all things necessary to render the alley safe for travel. Charges 21 and 22 provide that the fact that a city does not comply with engineering standards is insufficient by itself to prove that a street or alley had a defect or that the city was negligent in not bringing the street or alley *Page 1183 
up to standards or that the city had a duty to do so. The instructions given by the trial court to the jury were as follows:
 "So, in the event you are not satisfied by the evidence that the roadway in question is a public street or alley, this would end your deliberations and you would enter verdicts in favor of the defendant.
 "However, if you are satisfied by the evidence, that the roadway in question is a public street or alley, then you would continue in your deliberations according to the law as I will describe to you.
 "The defendant, City of Tallassee, at the time of the occurrence complained of, had the legal duty and obligation to exercise ordinary and reasonable care to keep and maintain its streets, sidewalks and public ways in a reasonably safe condition for travel by the public. For a negligent failure to fulfill this duty, the defendant would be liable for any injury or damage proximately caused by that negligence. The duty of the City to use due care to keep its streets, alleys and public ways reasonably safe for ordinary travel is not controlled by the manner in which the defect arose or by whom it was created. However, the defendant is not an insurer of the safety of the plaintiffs, but is only liable for injuries or damages proximately resulting from negligence on the part of the city. . . .
 "The plaintiffs had the right to assume that the way in question was reasonably safe to travel and the plaintiffs were under no duty to keep a special lookout for unknown defects or obstructions, unless there was some existing condition or circumstances to put the plaintiffs on notice that it was not reasonably safe. This assumption applies only to those who are exercising reasonable and ordinary care at the time and place involved. The duty upon the plaintiffs was to use and exercise only that degree of care to observe and respect the condition existing immediately ahead that a reasonable, prudent person would have used and exercised under the same or similar circumstances then existing.
 "Negligence is the failure to discharge or perform a legal duty owed to another party. Negligence means the failure to exercise reasonable or ordinary care. That is, such care as a reasonably prudent person would have exercised under the same or similar circumstances. Therefore, negligence is the failure to do what a reasonably prudent person would have done under the same or similar circumstances, or the doing of something which a reasonably prudent person would have not done under the same or similar circumstances."
The above instructions by the trial court in this regard were appropriate and sufficient.
The city asserts that the trial court erred in refusing to give charge 11, that is, a statement that the city's duty to maintain an alley is not as great as its duty to maintain a street. The city cites Althey v. Tennessee Coal, Iron Railway, 191 Ala. 646,68 So. 154 (1915), as authority for this proposition. The Court, however, does not find Althey to be valid authority for this proposition where, as here, the facts indicate the alley was used as a public way at the time of the accident. In Althey this Court opined:
 "Neither do we think, on the facts already stated and others to be stated, that the other defendant, the City of Birmingham, can be held to answer. The ditch was in an alley, appearing on the map introduced in evidence. Witnesses referred to it as a paper alley. This alley, in its surroundings, can in no proper or legal sense be considered as a highway designed for general travel, or be governed by rules relating to such highways. Evidently it was designed especially for the use and accommodation of the owners of abutting property, and to give the public the same unqualified rights therein that they have in and to the use of public streets would defeat the end and object of its dedication. — Bagley v. People, 34 Mich. 355, 5 N.W. 415, 38 Am.Rep. 192. From this it must be inferred that the municipal authorities are not under the same measure of responsibility for the *Page 1184 condition of the alley as a way as they are in the case of a public street. While the city may have, undoubtedly has, subject to the property rights of abutting owners, certain limited rights therein for municipal purposes, such, for example, as it appears to have exercised by collecting the water therein for its more convenient and beneficial disposition, yet there is no public responsibility for its use as a way for general travel. Moreover, this alley was not in actual use as a way for travel. It was no more a way than any other piece of wild and unprepared land, and it was wholly unfit for such use. Nor had anything ever been done to make it fit, or involving the municipal authorities in a recognition or adoption of it as a public way in any sort. Indeed the ditch operated as a practical denial of its user as a highway in any customary mode of such use. It follows that the city is not liable in this case as for an injury caused by a defect in a public municipal street or way." (Emphasis added.)
191 Ala. at 649-650, 68 So. at 155-156. The facts of the instant case are different. Here, the jury could have found that the public, as well as city personnel, used Alber Alley at various times as a "way for travel." Consequently, since the city's duty was not a lesser duty with respect to the alley, but a duty to exercise reasonable care to keep the alley in reasonably safe condition for travel, the trial court properly refused charge 11.
Charges 12, 13 and 15 provide that the city was under no duty, prior to the accident, to erect any sign on the alley, to make the alley one-way, or to remedy any slope on the alley. It is the Court's view that the facts and circumstances in this case presented a question for the jury's determination: whether the city had fulfilled its obligation of exercising ordinary and reasonable care in keeping the alley which was used regularly by the public in a reasonably safe condition for travel. See City ofFlorence v. Stack, 275 Ala. 367, 370, 155 So.2d 324, 327 (1963). Consequently, charges 12, 13 and 15 were properly refused.
As to charge 14 refused by the trial court, counsel for the city failed to make an objection as required under Rule 51 ARCP, to preserve review by this Court on appeal.
The trial court refused to grant the city's motion for remittitur or order a new trial of the jury's award of $15,000 to Hazel Hammock. Included in the amount awarded by the jury was compensation for her medical expenses, pain, suffering, permanent disability, loss of wages and property damages.
Dr. Hodge Eagleson testified that Hazel Hammock was suffering chronic residual effects from the accident at the time of the trial. He stated that his opinion was that the condition involving her neck, shoulder, wrist, left lower back and left hip would be permanent. He also testified that because of Hazel Hammock's age (she was 68 years old at the time of the trial), injuries of this sort become chronic and long lasting. The evidence indicated medical expenses for treatment of her injuries sustained in the accident amounted to more than $1,800 and that property damage to her car amounted to $1,400. The evidence further showed her lost wages totaled $130.
We have opined:
 "Assessment of damages is left largely to the discretion of the jury, in the first instance, and to the discretion of the trial judge on motion for new trial. A jury's award of damages will not be disturbed unless it is so excessive as to indicate passion, prejudice, corruption, or mistake. . . ."
Rosen v. Lawson, 281 Ala. 351, 356, 202 So.2d 716, 720 (1967). Furthermore, "[w]here the trial court refuses a new trial because of alleged excessive damages, the favorable presumption attending the verdict is thereby strengthened." Trahan v. Cook, 288 Ala. 704,710, 265 So.2d 125, 130 (1972). Based on Dr. Eagleson's testimony concerning the chronic and long lasting nature of the injuries suffered by Hazel Hammock, we do not find these damages excessive to the extent that they indicate passion, prejudice, corruption or mistake, and thus we affirm the trial court's decision not to disturb the jury's verdict. See Winn-Dixie v.Godwin, 349 So.2d 37 (Ala. 1977). *Page 1185 
 II
Both the city and the cross-appellant, Frank Harris, maintain that the individual verdicts rendered by the jury are inconsistent. As pointed out earlier, the jury found in favor of the individual plaintiffs but found for the city on Frank Harris's claims for property damages and damages for doctor bills, etc. for Michelle. The city asserts that because of these inconsistent verdicts, the case should be remanded for retrial as to all issues; Frank Harris contends that the verdicts favoring Hazel Hammock and Michelle Harris should stand and only the issues relating to his claims should be retried. Frank Harris labels his claims as "derivative." He states that he "suffered property damages to his vehicle which were not claimed by his daughter" and that "he suffered special damages of hospital bills and doctor bills which he was under an obligation to pay for the treatment of his minor daughter's injuries."
The city states in a reply brief:
 "The gist of the argument by plaintiff-appellant, Frank Harris, is that his case should be reversed and remanded for a new trial, but the other cases and verdicts should stand.
"The law is clearly to the contrary:
 "`When two actions are tried together, and inconsistent verdicts are rendered, sound practice requires that both verdicts be set aside without attempt by analysis of the evidence to determine which result the jury intended.' Underwriters National Assur. Co. v. Posey, 333 So.2d 815.
 "In Smith v. Richardson, 277 Ala. 389, 171 So.2d 96, the plaintiff-father of a minor, was successful in his damage suit, while the minor was unsuccessful in her consolidated action. Justice Harwood noted that it was interesting that the defendant sought to uphold the defendant's verdict and overturn the plaintiff's verdict, while the plaintiffs sought to overturn the defendant's verdict against the minor, but sustain the verdict for the father. In response to this, Justice Harwood stated:
 "`The verdicts, clearly inconsistent, having been rendered at the same time by the same jury, on identical facts, rendered speculative what the jury intended by its verdicts. Patently, the verdicts indicate confusion on the part of the jury.'
 "The Court went on to adopt the following language from a New York case:
 "`When, however, the two actions are thus tried together and inconsistent verdicts are rendered, we incline to the view that sound practice requires both verdicts to be set aside at once, without attempting, by analysis of the evidence or otherwise, to discover whether either should be allowed to stand. No other course is safe, for it cannot be told with reasonable certainty what facts the jury found.'"
In the instant case, however, the mother made no claim for Michelle's medical expenses; only Frank Harris made that claim, and Frank Harris was the party who presented evidence on that issue. He presented evidence of medical bills on which his name was typed as obligor. He presented evidence that the medical expenses were reasonable and necessary. Likewise, he presented evidence of the damage to his automobile.
We have reviewed the evidence, the instructions of the trial court to the jury, and we are of the opinion that the jury, having found liability on the part of the city, should have awarded Frank Harris some damages on his claims. A verdict contrary to the uncontradicted evidence should be set aside on a motion for a new trial. Mathews Morrow v. Batson, 218 Ala. 378,118 So. 749 (1928).
The trial court instructed the jury as to the damages claimed by Frank Harris as follows:
 "Once again, the law concerning compensatory damages is applicable to Mr. Harris. That is to say, the purpose of awarding compensatory damages, would be to fairly and reasonably compensate Mr. Harris for the loss or injuries sustained *Page 1186 
by him. Compensatory damages in this regard would be intended as money compensation to him, to compensate for his injury and other damages which have been inflicted upon him as a proximate result of the wrong complained of. Mr. Harris claims the following items of damages. He claims compensation for medical expenses incurred by his minor child, and further he claims damages for the loss of his motor vehicle. In regard to the medical expenses for his minor child, Michelle Harris, if you are reasonably satisfied from the evidence that Mr. Harris paid or became obligated to pay medical expenses for the care and treatment of his minor child, as a proximate result of the negligence of the defendant, then the Plaintiff would be entitled to recover the reasonable expense for such care and treatment as shown by the evidence, as being reasonable and necessary. In regard to the loss of his automobile, as was the case with Mrs. Hammock, the measure of damages would be the difference in the fair market value of the automobile immediately before the accident and the fair market value of the automobile immediately after the accident."
The jury was, therefore, instructed specifically regarding Frank Harris's claim.
In Lewis v. Moss, 347 So.2d 91 (Ala. 1977), this Court articulated a method of testing whether verdicts which may appear to be inconsistent are in fact inconsistent:
 "In either case, whether the issue is one of damages or one of liability, proof of the legally essential elements is the touchstone in determining the permissible limits of inconsistency of jury verdicts. Simply stated, whether in separate or consolidated trials, the jury verdict or verdicts, when tested by the proof, will be set aside if found to be legally irreconcilable."
347 So.2d at 94.
After carefully reviewing the evidence, the instructions of the trial court to the jury, and the applicable principles regarding inconsistent verdicts, we are of the opinion that Frank Harris is entitled to a new trial on his claims for medical expenses and damages to his automobile, but that the city is not entitled to a new trial on Michelle's claim of liability for her personal injuries.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR NEW TRIAL.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] Testimony indicates this was the year Alber Alley was conveyed to the City of Tallassee by Mt. Vernon Mills.
[2] "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty, or unless the said injury or wrong was done or suffered through the neglect, carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable to an action for damages by reason of the unauthorized or wrongful acts or the negligence, carelessness or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured."